UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISRAEL CAMEY MORALES, HECTOR MARTINEZ, LUIS MAURAT, ISAIAS NOE HERRERA, RIGOBERTO ALFARO, ANGEL ARANA, ALBERTO MORALES, CARLOS GUARDODA, GONZALO CORDOBA, and SAUL REYES RAMOS, individually, and on behalf of all others similarly situated,<br><br>                           Plaintiffs,<br><br>        -against-<br><br>PERFORMANCE MASTER, INC., FIVE HORSEMEN CONSTRUCTION INC., FIVE HORSEMEN LLC, and J.D.M. MARMOL & GRANITE CORP., and RONALD CHIEN, JOAH SAMUEL, DORREL COUSINS, LESLIE REID, and DAVID ALLEN, MARCUS ZHIMINAICELA, and ANGEL ZHIMINAICELA, as individuals,<br><br>                         Defendants. | Docket No.: 1:21-cv-00097 (AS) |

**DEFENDANTS FIVE HORSEMEN CONSTRUCTION INC., FIVE HORSEMEN LLC AND RONALD CHIEN'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

# <u>TABLE OF CONTENT</u>

**Page(s)**

PRELIMINARY STATEMENT ................................................................................ 1

RELEVANT PROCEDURAL HISTORY ............................................................... 2

STATEMENT OF MATERIAL FACTS.................................................................. 2

      FH Inc.'s Work With Subcontractors ...................................... 3

      The 22nd Street Construction Project ...................................... 4

      Site Safety Procedures At The 22nd Street Construction Project ........................... 8

LEGAL STANDARD............................................................................................. 10

ARGUMENT .......................................................................................................... 11

    POINT I  PLAINTIFFS DID NOT FILE WRITTEN CONSENTS TO  OPT IN
    AND THEIR FLSA CLAIMS ARE NOW TIME-BARRED ............................. 11

      A.      The FLSA Requires Written Consents from each Named Plaintiff.......... 12

      B.      Plaintiffs' FLSA Claims Are Time-Barred................................ 13

    POINT II    THE  HORSEMEN  DEFENDANTS  ARE  NOT  PLAINTIFFS'
    EMPLOYERS.................................................................................... 14

      A.      There  Is  No  Evidence  That  The  Horsemen  Defendants  Are
      Plaintiffs' Direct Employer.................................................. 15

      B.      Defendant  FH  LLC  Had  No  Involvement  With  The  22nd  Street
      Construction Project.......................................................... 16

      C.      The Horsemen Defendants Did Not Exercise "Formal Control" Over
      Plaintiffs. ...................................................................... 16

          1.      The Second Amended Complaint And Plaintiffs' Discovery
          Responses Establish That The Horsemen Defendants Did
          Not Hire or Fire Them. ................................................ 16

          2.      The  Horsemen  Defendants  Did  Not  Supervise  Plaintiffs'
          Work  Or  Control  Their  Work  Schedules  Or  Conditions  Of
          Employment................................................................. 17

          3.      Defendants FH Inc. And Chien Did Not Determine The Rate
          Or Method Of Plaintiffs' Compensation ..................... 20

i

4.    Defendants FH Inc. and Chien Did Not Maintain Employment Records For Plaintiffs...............................................22

D.    The Horsemen Defendants Did Not Exercise "Functional Control" Over Plaintiffs' Work Under the *Zheng* Factors .......................................22

1.    Plaintiffs Did Not Use The Horsemen Defendants' Premises Or Receive Equipment Directly From The Horsemen Defendants ...................................................................................23

2.    Plaintiffs' Labor Did Not Shift as a Unit From One Putative Joint Employer to Another............................................................24

3.    Plaintiffs Did Not Perform "Discrete Line-Job" Work Integral to the Horsemen Defendants' Production Process ..........24

4.    The Responsibilities Under the Sub-Subcontract Could Not Pass to Another Subcontractor "Without Material Changes".......25

5.    The Horsemen Defendants Did Not Supervise Plaintiffs' Labor...................................................................................................26

6.    Plaintiffs Were Not Required To Perform Work Exclusively For Defendants..............................................................................26

POINT III    THE HORSEMEN DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE NEW YORK LABOR LAW CLAIMS ....................................................................................................................27

POINT IV    THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' CLAIMS UNDER THE NYLL............28

CONCLUSION..................................................................................................................29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ansoumana v. Gristede's Operating Corp.,*
    255 F. Supp. 2d 184, 189 (S.D.N.Y. Jan. 28, 2003) ................................................................27

*Baguidy v. Boro Transit, Inc.,*
    283 F. Supp. 3d 14 (E.D.N.Y. Sep. 30, 2017) ........................................................................28

*Barrett v. Forest Labs., Inc.,*
    2015 U.S. Dist. LEXIS 88299 (S.D.N.Y. Jul. 8, 2015) ...........................................................13

*Carter v. Dutchess Community College,*
    735 F.2d 8 (2d Cir. 1984) ......................................................................................2, 14, 16, 17

*Casey v. Crescenzi,*
    923 F.2d 18 (2d Cir. 1991).......................................................................................................11

*El v. Potter,*
    01 Civ. 6125 (RWS), 2004 U.S. Dist. LEXIS 24447 (S.D.N.Y. Dec. 13, 2004) ...................12

*Gil v. Pizzarotti, LLC,*
    2021 U.S. Dist. LEXIS 59668 (S.D.N.Y. Mar 29, 2021) ............................................19, 20, 22

*Gjurovich v. Emmanuel's Marketplace, Inc.,*
    282 F. Supp. 2d 101 (S.D.N.Y. Sep. 19, 2003)................................................................11, 12

*Godlewska v. HDA,*
    916 F.Supp. 2d 246 (E.D.N.Y. 2013) ......................................................................................5

*Gonzalez v. El Acajutla Rest. Inc.,*
    2007 U.S. Dist. LEXIS 19690 (E.D.N.Y. Mar. 20, 2007) ......................................................12

*Grochowski v. Phoenix Constr.,*
    318 F.3d 80 (2d Cir. 2003).......................................................................................................11

*Herman v. RSR Sec. Servs.,*
    172 F.3d 132 (2d Cir. 1999).....................................................................................................14

*Hoffmann v. Sbarro, Inc.,*
    982 F. Supp. 249 (S.D.N.Y. Oct. 23, 1997)............................................................................12

*Hugee v. SJC Grp., Inc.,*
    2013 U.S. Dist. LEXIS 116471 (S.D.N.Y. Aug. 13, 2013) ..............................................20, 26

*Jean-Louis v. Metro. Cable Communs., Inc.*,
  838 F. Supp. 2d 111 (S.D.N.Y. Sept. 30, 2011) .................................................................20, 24

*Kaplan v. Wings of Hope Residence*,
  2020 U.S. Dist. LEXIS 22374 (E.D.N.Y. Feb. 7, 2020).........................................................28

*Lawrence v. Adderly Indus., Inc.*,
  2011 WL 666304 (E.D.N.Y. Feb. 11, 2011)............................................................................14

*Lin v. Comprehensive Health Mgmt., Inc.*,
  2009 WL 976835 (S.D.N.Y. Apr. 9, 2009)..............................................................................17

*Lin v. DJ's Int'l Buffet, Inc.*,
  2022 U.S. Dist. LEXIS 62413 (E.D.N.Y. Mar. 21, 2022)...................................................16, 21

*Martin v. Sprint United Mgmt. Co.*,
  273 F. Supp. 3d 404 (S.D.N.Y. Sept. 27, 2017) .....................................................................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  106 S.Ct. 1348 (1986)..............................................................................................................11

*Monzano-Moreno v. Libqual Fence Co.*,
  2021 U.S. Dist. LEXIS 24937 (E.D.N.Y. Feb. 5, 2021)..........................................................19

*Rutherford Food Corp. v. McComb*,
  331 U.S. 722 (1947).................................................................................................................23

*Summa v. Hofstra Univ.*,
  708 F.3d 115 (2d Cir. 2013)...............................................................................................10, 11

*Topo v. Dhir*,
2004 U.S. Dist. LEXIS 4134, *10 (S.D.N.Y. Mar. 15, 2004) ......................................................27

*Xuguang Chang v. CK Tours, Inc.*,
  2021 U.S. Dist. LEXIS 68487 (S.D.N.Y. Apr. 8, 2021)..........................................................10

*Zheng v. Liberty Apparel Co., Inc.*,
  355 F.3d 61 (2d Cir. 2003)............................................................................................ *passim*

**Statutes**

28 U.S.C. § 1367(c)(3).....................................................................................................................27

29 U.S.C. § 203(d)..........................................................................................................................14

29 U.S.C. §216(b) .....................................................................................................................11, 12

29 U.S.C. §255...........................................................................................................................12, 13

iv

29 U.S.C. §256 .................................................................................................12, 14

29 CFR §1926.32 ....................................................................................................17

29 CFR §1926.20(b)(1) ..........................................................................................17

29 CFR §1926.20(b)(2) ..........................................................................................18

NYC Admin. Code §BC 3301.13.12 ......................................................................18

NYC Admin. Code §BC 3310.8.4 ..........................................................................18

NYC Admin. Code §BC 3301.13.13 ......................................................................18

**Other Authorities**

Fed. R. Civ. P. 56 ...................................................................................................10

Fed. R. Civ. P. 56(e) ..............................................................................................10

## PRELIMINARY STATEMENT

This is a meritless collective action, brought pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), built entirely on speculative claims against Defendants Five Horsemen Construction Inc. ("FH Inc."), Five Horsemen LLC ("FH LLC") and Ronald Chien ("Chien") (collectively, the "Horsemen Defendants").   The claims against the Horsemen Defendants cannot stand and must be dismissed.   Plaintiffs Israel Camey Morales ("Morales"), Hector Martinez ("Martinez"), Luis Maurat ("Maurat"), Isaias Noe Herrera ("Herrera"), Rigoberto Alfaro ("Alfaro"), Angel Arana ("Arana"), Alberto Morales ("A. Morales"), Carlos Guardoda ("Guardoda"), Gonzalo Cordoba ("Cordoba") and Saul Reyes Ramos ("Ramos") are construction workers who worked at a construction site in which FH Inc. was the general contractor.   Although they were not directly employed by the Horsemen Defendants, Plaintiffs nonetheless claim that the Horsemen Defendants are liable to them for unpaid minimum and overtime wages in violation of the FLSA and the NYLL. (ECF Doc. 49, at ¶¶185,189,193,200). Plaintiffs further claim that the Horsemen Defendants are liable for other violations of the NYLL by failing to provide them with wage notices and wage statements, and maintain employment records during their employment. (ECF Doc. 49, at ¶202,205)  But, as demonstrated below, all of these claims are not supported by any evidence and summary judgment must be granted to the Horsemen Defendants.

As an initial matter, despite filing this lawsuit as a collective action, Plaintiffs failed to file written consents to opt in.  This failure is fatal to their claims as a matter of law because, until they filed written consents, their FLSA claims were not tolled and, consequently, those claims are now time-barred.  Assuming *arguendo* that Plaintiffs' FLSA claims continue to be viable – they are not – all of Plaintiffs' federal and state wage and hour claims must nonetheless be dismissed as a matter

1

of law because, as set forth herein, they have no evidence to show that the Horsemen Defendants acted as their direct or joint employer under the formal control and function control tests set forth by the Second Circuit in *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984). and in *Zheng v. Liberty Apparel Co., Inc*., 355 F.3d 61, 72 (2d Cir. 2003). For these reasons, summary judgment must be granted to the Horsemen Defendants.

## RELEVANT PROCEDURAL HISTORY

Plaintiffs' initial Collective Action Complaint (the "Complaint") was filed against Defendants Performance Master Inc. ("Performance Master"), FH Inc., FH LLC, Chien and Joah Samuel on January 6, 2021. (ECF Doc. 1). On March 31, 2021, the Horsemen Defendants filed their Answer to the Complaint, categorically denying Plaintiffs' allegations. (ECF Doc. 17). On November 4, 2021, Plaintiffs filed the Amended Collective Action Complaint (the "Amended Complaint") (ECF Doc. 34) and the Horsemen Defendants filed their Answer to the Amended Complaint on November 23, 2021 (ECF Doc. 45). On January 24, 2022, Plaintiff filed a Second Amended Collective Action Complaint (the "Second Amended Complaint"). (ECF Doc. 49). The Horsemen Defendants filed their Answer to the Second Amended Complaint on February 8, 2022. (ECF Doc. 56). To date, none of the Plaintiffs ever filed written consents to opt in the Collective Action. (Declaration of Concepcion A. Montoya, dated January 12, 2024 (the "Montoya Decl."), ¶3). As set forth in the Court's Order on December 18, 2023, the Horsemen Defendants now submit their motion for summary judgment.

## STATEMENT OF MATERIAL FACTS

At all times relevant to Plaintiffs' claims, FH Inc. was a general contracting and building development firm that specializes in ground-up construction, gut renovations, and alterations of luxury condo's and mixed use buildings throughout New York and the Tri-State area. (*See*

Affidavit of Ronald Chien, dated January 11, 2004 (the "Chien Aff."), ¶3). FH Inc. was the general contractor for the construction site located on 327 East 22nd Street New York, NY 10010 (the "22nd Street Construction Project") where Plaintiffs worked for certain periods in 2018, 2019 and 2020 as alleged in this lawsuit. (*See* Chien Aff., ¶4).

FH LLC is a general contracting company that was formed to further business development to secure projects within the public sector. (*See* Chien Aff., ¶5). FH LLC does not own, operate or finance FH Inc. (*See* Chien Aff., ¶6). Chien is the sole owner of FH Inc. and a principal at FH LLC. (*See* Chien Aff., ¶2). FH LLC had no involvement with the 22nd Street Construction Project and did not contract with any general contractor, subcontractor or sub-subcontractors regarding the 22nd Street Construction Project. (*See* Chien Aff., ¶7).

## FH Inc.'s Work With Subcontractors

FH Inc. routinely hires various subcontractors to perform specific services on its construction projects depending on the nature and size of the job, the project location, and the scopes of work, which fluctuates as the project develops. (*See* Chien Aff., ¶8). When a subcontractor is engaged by FH Inc. for a specific project, the subcontractor will staff the project with individuals they employ and supervise. (*See* Chien Aff., ¶9). FH Inc. is not involved with the employment of individuals who work with subcontractors, including their hiring and firing, drug test and background checks, providing work schedules, assigning shifts and duties, setting their rate of pay, and paying their wages. (*See* Chien Aff., ¶10).

As the general contractor, FH Inc. is required to comply with the worksite safety regulations under federal, state and local laws and regulations including those of the Occupational Safety and Health Administration ("OSHA") and the New York City Department of Buildings (the "DOB"). (*See* Chien Aff., ¶11).

3

**The 22nd Street Construction Project**

On November 9, 2017, FH Inc. entered into a general contract agreement with Gramercy 1860 LLC C/O SC Property Development LLC (the "General Contract") to perform general contracting services for the ground-up construction of a condominium at 327 East 22nd Street New York, NY 10010 (the "22nd Street Construction Project"). (*See* Chien Aff., ¶12). FH Inc. had no ownership interest in the 22nd Street Construction Project. (*See* Chien Aff., ¶13). Neither Chien nor FH LLC had any ownership interest in the 22nd Street Construction Project. (*See* Chien Aff., ¶14).

FH Inc. served as the general contractor for the 22nd Street Construction Project. (*See* Chien Aff., ¶4). FH Inc. subsequently entered into a subcontractor agreement with DHC Contracting Inc. ("DHC") on February 21, 2018 (the "DHC Subcontract Agreement"). (*See* Chien Aff., ¶15). Pursuant to the DHC Subcontract Agreement, DHC was solely responsible for the supervision of the work at the 22nd Street Construction Project. (*See* Chien Aff., ¶16; Ex. B at p. 5, §4.2.2). FH Inc. had no knowledge or provided any input into how DHC hired, fired, paid and supervised their workers. (*See* Chien Aff., ¶18).

FH Inc., FH LLC and Chien have no ownership interest in DHC. (*See* Chien Aff., ¶20). FH Inc. had no authority to terminate any individual subcontracted or employed by DHC and would have no knowledge if any of DHC's sub-subcontractors and the employees of any DHC sub-subcontractors were fired or transferred to a different project. (*See* Chien Aff., ¶19; Ex. B at p. 5, §4.2.6). FH Inc. was not permitted to give instructions or orders directly to DHC's employees or to DHC's sub-subcontractors. (*See* Chien Aff., ¶17; Ex. B at p. 3, §3.3.2).

Under the DHC Subcontract Agreement, DHC had the option to enter into a written subcontract agreement with sub-subcontractors to perform portions of the work for the 22nd Street Construction Project in accordance with the Subcontract Agreement. (*See* Chien Aff., ¶21; Ex. B

at §4.2.1). On May 10, 2018, DHC exercised this right by entering into a subcontract agreement with Performance Master (the "PM Sub-Subcontract Agreement"). DHC provided FH Inc. with a copy of the PM Sub-Subcontract Agreement. (*See* Chien Aff., ¶22). Pursuant to the PM Sub-Subcontract Agreement, Performance Master was responsible for furnishing all material, *labor*, equipment, clean up, and necessary services and warranties to complete the sub-subcontract work at the 22nd Street Construction Project. (*See* Chien Aff., ¶24; Ex. C at §3)(emphasis added).

Pursuant to the PM Sub-Subcontract Agreement, DHC was required to pay Performance Master for the cost of performing the scope of the work under the PM Sub-Subcontract Agreement. (*See* Chien Aff., ¶23; Ex. C at §4). DHC received progress payments which indicated the percentage of completion of each portion of DHC's work. (*See* Chien Aff., ¶25; Ex. B at §11.1.1). Before issuing the final payment to DHC, DHC had to provide lien waivers from the sub-subcontractors hired by DHC. (*See* Chien Aff., ¶26; Ex. B at p. 15 §11.3.2). Among the lien waivers submitted by DHC to FH Inc. are lien waivers from Performance Master. (*See* Chien Aff., ¶26; Ex. D).

FH Inc. had no knowledge and did not provide any input into how Performance Master hired, fired, paid and supervised their workers. (*See* Chien Aff., ¶27). FH Inc. had no authority to terminate any individual employed by Performance Master and has no knowledge if any of Performance Master's employees were fired or transferred to a different project. (*See* Chien Aff., ¶28). FH Inc. has no knowledge of how Performance Master established its rates of payment, methods of payment, and timing of payment for their laborers. (*See* Chien Aff., ¶29). FH Inc. was not in charge of hiring, disciplining, and had no firing authority over Plaintiffs. (*See* Chien Aff., ¶30). Chien did not hire, fire, assign duties, set pay rates and work schedules, and supervise the

specific tasks or work assignments of individuals who worked for subcontractors and sub-subcontractors at the 22nd Street Construction Project, including Plaintiffs. (*See* Chien Aff., ¶57). On occasion, Chien visited the 22nd Street Construction Project to meet with the officers of subcontractors and discuss the development and scheduling of the project. (*See* Chien Aff., ¶56).

FH, Inc., FH LLC, and Chien do not have any ownership interest in Performance Master. (*See* Chien Aff., ¶31). FH Inc. did not contract with Defendant J.D.M. Marmol & Granite Corp. for the 22nd Street Construction Project. (*See* Chien Aff., ¶32). FH Inc., FH LLC and Chien do not have any ownership interest in Defendant J.D.M. Marmol & Granite Corp. (*See* Chien Aff., ¶33).

Plaintiffs' Morales, Arana, Herrera, Ramos, Maraut, Alfaro, and A. Morales Verified Responses to the Horsemen Defendants First Set of Interrogatories (the "Interrogatories") are devoid of any assertion that the Horsemen Defendants hired, fired or issued payment for their work at the 22nd Street Construction Project. (*See* Montoya Decl., Exs. C1-C7). In their Verified Responses to the Interrogatories, Plaintiffs Israel Camey Morales, Arana, Herrera, Ramos, Alfaro, Maraut, Alberto Morales, Guardoda, and Martinez identified Angel Zhiminaicela as the individual who hired them. (*See* Montoya Decl., Exs. C1-C9, Response to Interrogatory No. 3). In their Verified Responses to the Interrogatories, Plaintiffs Israel Camey Morales, Arana, Herrera, Ramos, Alfaro, Maraut, Alberto Morales, Guardoda, and Martinez identified Angel Zhiminaicela as the individual who directly supervised them. (*See* Montoya Decl., Exs. C1-C9, Response to Interrogatory No. 5). In their Verified Responses to the Interrogatories, Plaintiffs Guardoda and Martinez also identified Joah Samuel and David Allen as supervisors. (*See* Montoya Decl., Exs. C8, C9, Response to Interrogatory No. 5).

6

In their Verified Responses to the Interrogatories, Plaintiffs Morales, Arana, Herrera, Ramos, Alfaro, Maraut, A. Morales, Guardoda, and Martinez admitted they were paid in cash weekly by Angel Zhiminaicela, and sometimes others but Plaintiffs do not recall their names. (*See* Montoya Decl., Exs. C1-C9, Response to Interrogatory No. 7). In their Verified Responses to the Interrogatories, Plaintiffs Morales, Arana, Herrera, Ramos, Alfaro, Maraut, A. Morales, Guardoda, and Martinez admitted that they notified Angel Zhiminaicela of their resignation from the job. (*See* Montoya Decl., Exs. C1-C9, Response to Interrogatory No. 4). None of Plaintiffs' discovery responses identify FH LLC. (Montoya Decl., ¶25). Notably, Plaintiff Cordoba did not response to Horsemen Defendants' Request for Interrogatories. (Montoya Decl., ¶18).

No Plaintiff appears in any of FH Inc.'s employee records, certified payroll records for the 22nd Street Construction Project, or on FH Inc.'s electronic timekeeping logs maintained for payroll purposes. (*See* Chien Aff., ¶34). Defendants Dorrell Cousins, Leslie Reid, David Allen, Angel Zhiminaicela and Marcus Zhiminaicela do not appear in any of FH Inc.'s employee records, certified payroll records for the 22nd Street Construction Project, or on FH Inc.'s electronic timekeeping logs maintained for payroll purposes. (*See* Chien Aff., ¶35). Defendants Dorrell Cousins, Leslie Reid, David Allen, Angel Zhiminaicela, and Marcus Zhiminaicela are not owners, officers, or employees of FH Inc. or FH LLC. (*See* Chien Aff., ¶36).

FH Inc. employees are paid through paychecks issued by ADP with accompanying pay stubs, and does not pay its employees in cash. (*See* Chien Aff., ¶37). Chien did not distribute any wage payments in cash or otherwise to anyone, including Plaintiffs, at the 22nd Street Construction Project. (*See* Chien Aff., ¶38). None of FH Inc. officers or employees are authorized to distribute any wage payments in cash or otherwise to anyone at the 22nd Street Construction Project. (*See* Chien Aff., ¶39). Chien did not review, approve or sign-off on any timesheets involving Plaintiffs.

(*See* Chien Aff., ¶40). None of FH Inc. officers or employees are authorized to review, approve or sign-off on any timesheets involving Plaintiffs. (*See* Chien Aff., ¶41). Further, FH Inc. did not provide any tools or materials to utilize for the work of the subcontractors or their employees at the 22nd Street Construction Project. (*See* Chien Aff., ¶42).

**Site Safety Procedures At The 22nd Street Construction Project**

In compliance with the rules and regulations for the construction industry of the Occupational Safety and Health Administration ("OSHA") and the DOB, FH Inc. is required to perform regular safety checks (including site walk-throughs, inspections and a review of the work to be done for a given day) as well as conduct orientation trainings for all of the on-site laborers, including those assigned to the construction site by any FH Inc.'s subcontractors and the sub-subcontractors engaged by the subcontractors. (*See* Chien Aff., ¶43). These safety orientations or meetings are performed by FH Inc.'s designated safety director, who is also known as a "Competent Person." *Id.* The DOB requires an authorized agent of an employer to designate a "Competent Person" to be present at a construction site for each scheduled workday to conduct frequent and regular inspections of the job sites. (*See* Chien Aff. ¶46).

In compliance with OSHA and DOB regulations, FH Inc. designated Defendant Joah Samuel ("Samuel") as the Safety Director/Competent Person for the 22nd Street Construction Project. (*See* Chien Aff. ¶49). In addition, for site safety compliance purposes, FH Inc. is required to maintain safety orientation sign-in sheets containing the name of the project, the list of all individuals who attended the orientation meetings and the name of the organization or company they work for. (*See* Chien Aff. ¶44).The Competent Person also fills out the safety orientation sheet to provide a summary of the work activity and related safety instructions provided that day. (*See* Chien Aff. ¶44).

The safety orientation sheet for February 13, 2020 that was produced by Plaintiffs shows a summary of work activity at the site, the safety instructions provided, the start and end time of the orientation, and the individuals who attended. (*See* Montoya Decl., Ex. A). Nothing in the safety orientation sheet reflects that FH Inc. or Defendant Samuel assigned tasks to Plaintiffs. *Id.*

FH. Inc. kept a daily Sign-In Sheet for its construction sites, including the 22nd Street Construction Project, as required by the DOB's site safety regulations. (*See* Chien Aff. ¶47; Ex. E). Failure to keep a daily Sign-In Sheet would be a violation of the DOB's regulations. (*See* Chien Aff. ¶47). The daily Sign-In Sheets were not used for payroll purposes. *Id.* According to the 22nd Street Construction Project Sign-In Sheets, individuals present at the work site for a given work day would fill out their name and identify the "Organization/Company" that they work for. (*See* Chien Aff. ¶48; Ex. E). As evidenced by FH Inc.'s Daily Sign-In sheets, for every single day that Plaintiffs worked at the 22nd Street Construction Project, they each consistently listed "PM," presumably Performance Master, as their "Organization/Company" and not FH Inc. or FH LLC. (*See* Chien Aff.; Ex. E). None of the Plaintiffs appear in FH Inc.'s daily Sign-In Sheets in 2018 for the 22nd Street Construction Project. (*See* Chien Aff.; Ex. E).

Defendant Samuel was responsible for overseeing the operations at the 22nd Street Construction Project for site safety and quality control purposes, and to conduct site safety orientations for all on-site laborers performing work at the site in compliance with OSHA and DOB requirements. (*See* Chien Aff. ¶50). He was also authorized to identify any safety hazards and take prompt corrective action, if needed, at the 22nd Street Construction Project in compliance with OSHA and the DOB. *Id.* Defendant Samuel was also responsible for submitting the safety orientation sheets and daily sign-in sheets to FH Inc. in order to comply with the DOB requirements and avoid any DOB violations. (*See* Chien Aff. ¶51). Defendant Samuel was not

authorized to provide any tools or materials to any on-site laborer who was not employed by FH Inc. to utilize for their work at the 22nd Street Construction Project. (*See* Chien Aff. ¶52). Defendant Samuels was not authorized to hire, fire, assign duties, set pay rates and work schedules, and supervise the specific tasks or work assignments of individuals who worked for subcontractors and sub-subcontractors at the 22nd Street Construction Project, including Plaintiffs. (*See* Chien Aff. ¶52).

If there was an issue at the 22nd Street Construction Project relating to the progress of the work or the blueprints, Defendant Samuel was instructed to discuss those matters with the foreman or any authorized representative of the subcontractor or sub-subcontractors who was at the jobsite on that given day. (*See* Chien Aff. ¶53). Defendant Samuel was not authorized to review, approve or sign-off on any timesheets involving Plaintiffs. (*See* Chien Aff. ¶54). Defendant Samuel was also not authorized to distribute any wage payments in cash or otherwise to anyone at the 22nd Street Construction Project. (*See* Chien Aff. ¶55).

## LEGAL STANDARD

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). Summary judgment is appropriate where "after adequate time for discovery and upon motion," the non-moving party has "failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Xuguang Chang v. CK Tours, Inc.*, 2021 U.S. Dist. LEXIS 68487, *5 (S.D.N.Y. Apr. 8, 2021).

On a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Summa v. Hofstra*

*Univ.*, 708 F.3d 115, 123 (2d Cir. 2013). However, a party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must … set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S.Ct. 1348, 1356 (1986). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. *Casey v. Crescenzi*, 923 F.2d 18, (2d Cir. 1991). Further, employees who bring an action under the FLSA or the NYLL for unpaid wages must prove that they performed the work and was not compensated properly for their time. *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 87 (2d Cir. 2003). As demonstrated herein, Plaintiffs are unable to carry their burden of proof and summary judgment must be granted to the Horsemen Defendants.

## ARGUMENT

### POINT I

### PLAINTIFFS DID NOT FILE WRITTEN CONSENTS TO OPT IN AND THEIR FLSA CLAIMS ARE NOW TIME-BARRED

The FLSA expressly states that "no employee shall be a party plaintiff to any such [collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. §216(b). Accordingly, "all plaintiffs, including named plaintiffs, must file written consents in order to begin their lawsuits, and the courts have made clear that a [§216] suit does not begin until a consent has been filed." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. Sep. 19, 2003). Unlike a class action, only plaintiffs who "opt in" can be "bound by the judgment" or "benefit from" a collective action. *Id.* "Moreover, only by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled. *Id.* Here, as Plaintiffs filed a §216(b) collective action, their

failure to each file a written consent to opt is fatal to their claims as the statute of limitations on their claims was not tolled and has now expired. Thus, their FLSA claims must be dismissed.

A.    The FLSA Requires Written Consents from each Named Plaintiff.

29 U.S.C. §255 provides that any cause of action for unpaid minimum wages, unpaid overtime or liquidated damages under the FLSA must "be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of the willful violation may be commenced within three years after the cause accrued" (emphasis added). An FLSA collective action brought under §216(b) can be commenced for an individually named plaintiff and the statute of limitations on their claims is tolled in a collective action in only one of two ways: (1) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (2) if such written consent was not so filed or if his name did not so appear— on the subsequent date on which such written consent is filed in the court in which the action was commenced. 29 U.S.C. §256. In other words, the statute of limitations continues to run until a plaintiff files a written consent opting into the collective action suit.

It is well-established in this Circuit that even named plaintiffs in a collective action must file a written consent; the filing is absolutely mandatory. *El v. Potter*, 01 Civ. 6125 (RWS), 2004 U.S. Dist. LEXIS 24447 at *26 (S.D.N.Y. Dec. 13, 2004); *see also Gjurovich*, *supra,* 282 F. Supp. 2d at 104 ("only by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled"); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. Oct. 23, 1997) (same); *Gonzalez v. El Acajutla Rest. Inc.*, 2007 U.S. Dist. LEXIS 19690, *16 (E.D.N.Y. Mar. 20, 2007) (written consent to join in FLSA collective action not satisfied by the filing of the complaint itself). In other words, named plaintiffs must file written consents in order to begin their lawsuits. *El*, *supra* at 25. Absent such filing, a plaintiff is not bound by the outcome of a collective action and

12

courts have made clear that a suit does not begin until a consent has been filed. *Id*. Critically in this action, Plaintiffs' failure to file written consents meant that they are not bound to this Collective Action lawsuit and filing written consents now does not save their claims because, as further discussed in Point I. B. *infra*, the statute of limitations have expired on their FLSA claims.

Here, Plaintiffs commenced this lawsuit by filing the Complaint on January 6, 2021. (ECF Doc. 1). Subsequently, on November 4, 2021, Plaintiffs filed the Amended Complaint (ECF Doc. 34) and on January 24, 2022, Plaintiffs filed a Second Amended Complaint (ECF Doc. 49). Despite these amended pleadings, none of the Plaintiffs ever filed written consents to opt in to the lawsuit. All of their complaints are filed as Collective Action complaints. Plaintiffs' failure to file the written consents is fatal to their FLSA claims and cannot be cured because any subsequent filing would not relate back to the date of the original complaint. *See Barrett v. Forest Labs., Inc*., 2015 U.S. Dist. LEXIS 88299, *5 (S.D.N.Y. Jul. 8, 2015) (written consents filed subsequent to the complaint do not relate back to the original filing date of the complaint). Even if Plaintiffs were to file written consents to opt in now, doing so would be futile as their claims are now time-barred by the FLSA.

   B.   Plaintiffs' FLSA Claims Are Time-Barred.

Claims for violations of the FLSA may be commenced within two years after the cause of action accrued, except where a plaintiff alleges a willful violation, whereby a plaintiff will have three years after the cause of action accrued to commence an action. 29 U.S.C. § 255. Here, Plaintiffs' claims accrued up until their last day of employment. Plaintiffs Ramos and Cordoba worked at the 22nd Street Construction Project until on or about March 2020. (Second Am. Cmpl. at ¶¶8-9). All of the other Plaintiffs worked at the 22nd Street Construction Project until on or about February 2020. (Second Am. Cmpl. at ¶¶10-17). Therefore, Plaintiffs' FLSA claims expired on either February 2022 or March 2022 for non-willful violations or February 2023 or March 2023

13

for willful violations. Thus filing the written consents at this juncture would be futile because all their FLSA claims are expired.  Given their failure to comply with 29 U.S.C. §256, Plaintiffs claims must be dismissed.

## POINT II

### THE HORSEMEN DEFENDANTS ARE NOT PLAINTIFFS' EMPLOYERS

It is axiomatic that liability for violations of both the FLSA and NYLL requires the existence of an employment relationship between the parties.  The FLSA defines "employers" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  Although the provisions of the FLSA are to be read expansively, "an alleged employer must, at minimum possess the power to control the workers in question."  *Herman v. RSR Sec. Servs*., 172 F.3d 132, 139 (2d Cir. 1999) *citing Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984).  Under the FLSA, an individual may be jointly employed by more than one entity at the same time.  *Carter*, 735 F.2d at 12.  Plaintiffs bear the burden of establishing the existence of a joint employment relationship.  *See Zheng v. Liberty Apparel Co., Inc*., 355 F.3d 61, 76 (2d Cir. 2003).  To determine whether joint employment exists, courts use both the "formal control" and "functional control" tests.  The Second Circuit has held that the *Carter* factors are not the exclusive touchstone of the joint employer inquiry under the FLSA. *Zheng*, 355 F.3d at 71, 78-79. No one of the four factors standing alone is dispositive.  *Herman*, 172 F.3d 132 at 139. The Second Circuit instead has routinely held the "economic reality" test encompasses the totality of circumstances, no one of which is exclusive.  *Id.*  Since economic reality is determined based upon all the circumstances, any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition. *Id.* Significantly, joint employment status under both the FLSA and NYLL is analyzed using the same standards.  *Lawrence v. Adderly Indus., Inc*., 2011 WL 666304, at *6-8, fn. 2 (E.D.N.Y. Feb. 11, 2011). As set forth below, Plaintiffs are unable to

14

carry their burden in demonstrating that the Horsemen Defendants functioned as their joint employer and the Horsemen Defendants are therefore entitled to summary judgment.

A.    There Is No Evidence That The Horsemen Defendants Are Plaintiffs' Direct Employer.

Plaintiffs' Interrogatory responses are devoid of any assertion that the Horsemen Defendants hired, fired or paid them for work at the 22nd Street Construction Project. (Montoya Decl., ¶19). Notably, Plaintiff, Cordoba never provided Interrogatory responses. (Montoya Decl., ¶18). Plaintiffs also produced a snapshot of a "Performance Master Work Log" showing who worked on a given day for a specific site and the times they signed in, signed out, took lunch and worked overtime or "OT." (Montoya Decl., Ex. B). This "Performance Master Work Log", dated February 13, 2020, indicates "Job Site: Halsey" and not the 22nd Street Construction Project. *Id.*

Further, all of the Plaintiffs admit that Defendant Angel Zhiminaicela, hired and supervised them. (Montoya Decl. at Exs. C1-C9, Response to Interrogatory No. 5). Plaintiffs also admit that they were paid in cash weekly by Defendant Angel Zhiminaicela, although there were others who paid them as well but they do not recall their names. (Montoya Decl. at Exs. C1-C9, Response to Interrogatory No. 7). Defendant Angel Zhiminaicela is not an owner, officer, or employee of FH Inc. or FH LLC. (Chien Aff., ¶36).

While Plaintiffs Martinez and Guardodo identify Defendant Samuel and Defendant David Allen as supervisors, in addition to Angel Zhiminaicela, they also state that they could not identify other individuals who supervised them. (Montoya Decl., Exs. C8-C9, Response to Interrogatory No. 5) Plaintiff Martinez also identified an individual named Donovan as his supervisor. (Montoya Decl., Ex. C8, Response to Interrogatory No. 5). Each Plaintiff also state that they were sometimes paid by individuals but do not recall their names. (Montoya Decl. at Exs. C1-C9, Response to Interrogatory No. 7). But boilerplate responses are inadequate to overcome their

15

burden on summary judgment. *See e.g. Lin v. DJ's Int'l Buffet, Inc.*, 2022 U.S. Dist. LEXIS 62413, *5-6 (E.D.N.Y. Mar. 21, 2022) (granting summary judgment where plaintiff's conclusory and boilerplate Interrogatories were insufficient to show Defendant was Plaintiffs' direct employer). Without more, these generalized statements are insufficient to establish that the Horsemen Defendants directly employed Plaintiffs.

B.    Defendant FH LLC Had No Involvement With The 22nd Street Construction Project.

FH LLC cannot be held as Plaintiffs' direct or joint employer  because it was not involved in the 22nd Street Construction Project where Plaintiffs worked for certain periods in 2018, 2019 and 2020 as alleged in this lawsuit. (Chien Aff., ¶7).  FH Inc., not FH LLC, was the general contractor of the 22nd Street Construction Project. (Chien Aff., ¶¶4,7,12).  None of the contracts governing the 22nd Street Construction Project involve FH LLC.  (Chien Aff., ¶¶12, 15, 22).  FH LLC does not own, operate or finance FH Inc.  (Chien Aff., ¶6).  None of Plaintiffs' discovery responses identify FH LLC.  (Montoya Decl., ¶26).  Given the lack of evidence against FH LLC, it should be dismissed from this action.

C.    The Horsemen Defendants Did Not Exercise "Formal Control" Over Plaintiffs.

In assessing whether a purported joint employer exercised "formal control," courts look at whether the alleged joint employer (1) had the power to hire and fire; (2) supervised and controlled the work schedules or conditions of employment; (3) determined the rates of pay or methods of payment; and (4) maintained employment records. *Carter*, 735 F.2d at 12.  As shown below, the Horsemen Defendants cannot be said to have exercised "formal control" over Plaintiffs.

1.    *The Second Amended Complaint And Plaintiffs' Discovery Responses Establish That The Horsemen Defendants Did Not Hire or Fire Them.*

The Second Amended Complaint alleges that Defendant Angel  Zhiminaicela is an owner, officer and/or authorized agent of Defendant J.D.M. Marmol & Granite Corp.  (ECF Doc. 49,

¶¶71, 73, 75, 77-78, 80, 82, 84, 86 and 88).  As discussed in Point II.A *supra*, Plaintiffs admit that they were directly hired by Defendant Angel  Zhiminaicela.  (Montoya Decl. at Exs. C1-C9, Response to Interrogatory No. 3).  Plaintiffs further admit that they informed Angel Zhiminaicela that they were voluntarily leaving their jobs.  (Montoya Decl. at Exs. C1-C9, Response to Interrogatory No. 4).  Defendant Angel  Zhiminaicela is not an owner, officer, or employee of FH Inc. or FH LLC.  (Chien Aff., ¶36).  Courts regularly dismiss claims against alleged joint employers where, as here, this factor weighs so heavily in the Horsemen Defendants' favor.  *See, e.g.*, *Lin v. Comprehensive Health Mgmt., Inc*., 2009 WL 976835, at *2 (S.D.N.Y. Apr. 9, 2009) (dismissing claim where complaint lacked any allegation that defendant "had power to make hiring or firing decisions").  This Court should follow suit.

2.    *The Horsemen Defendants Did Not Supervise Plaintiffs' Work Or Control Their Work Schedules Or Conditions Of Employment.*

The second *Carter* factor examines whether the purported joint employer "supervised and controlled employee work schedules or conditions of employment." *Carter*, *supra*, 735 F.2d at 12.  The more supervision and control an entity exercises, the more likely it is an employer.  *Zheng*, *supra*, 355 F.3d at 74-75.  Again, Plaintiffs' Interrogatory responses expressly state that their direct supervisor was Defendant Angel Zhiminaicela and they informed him that they were resigning due to unpaid wages.  (Montoya Decl. at Exs. C1-C9, Response to Interrogatory No. 4).  While Plaintiffs Martinez and Guardoda state that Defendant Samuel supervised their work, they also identify Angel Zhiminaicela and David Allen, both of whom are not owners, officers or employees of FH Inc. (Chien Aff., ¶36).  Plaintiff Martinez also identifies an individual named Donovan as his supervisor.  (Montoya Decl., Ex. C8, Response to Interrogatory No. 5).

There is no question that Defendant Samuel also worked at the 22nd Street Construction Project as the Safety Director or Competent Person of FH Inc., but his duties and responsibilities

17

were limited to site safety orientations for all on-site laborers performing work on any given work day in compliance with federal and state site safety laws. (Chien Aff., ¶50); *see* 29 CFR §1926.32 (defining the responsibilities of a competent person); 29 CFR §1926.20(b)(1); Defendant Samuel was not authorized to hire, fire, assign duties or work schedules, or otherwise supervise the tasks or work performed by any of the workers provided by or affiliated with the subcontractors and sub-subcontractors at the 22nd Street Construction Project, including Plaintiffs.  (Chien Aff., ¶52). Defendant Samuel was also not authorized to provide Plaintiffs with tools or materials to utilize for their work at the 22nd Street Construction Project.  (Chien Aff., ¶52).

As the project site's Competent Person, Defendant Samuel kept and maintained a safety orientation sheet which kept track of each on-site laborer who attended the safety orientation, as required by the regulations of the Occupational Safety and Health Administration ("OSHA") and the New York City Department of Buildings ("DOB"). (Chien Aff., ¶¶43-44, 51); *see*  NYC Admin. Code §BC 3301.13.12; *See* NYC Admin. Code §BC 3310.8.4 (stating a site safety log shall be maintained and kept at the [job]site); 29 CFR §1926.20(b)(2); The safety orientation sheet for February 13, 2020 that was produced by Plaintiffs shows a summary of work activity at the site, the safety instructions provided, the start and end time of the orientation, and the individuals who attended.  (Montoya Decl., Ex. A).  Nothing in the safety orientation sheet reflects that FH Inc. or Defendant Samuel assigned tasks to Plaintiffs.  *Id.*

The DOB's  site safety requirements also required the maintenance of Daily Sign-In sheets. (Chien Aff., ¶47); *see* NYC Admin. Code §BC 3301.13.13. The FH Sign-In sheets are not used for payroll purposes.  (Chien Aff., ¶47).  FH Inc.'s Daily Sign-In sheets (Chien Aff., Ex. E) are clearly different from the "Performance Master Work Log" produced by Plaintiffs (Montoya Decl., Ex. B).  While both contain the names of individual at the site for a given day, times in and times

18

out, the FH Inc. daily Sign-In Sheet has a column for "Organization/Company" where the individual specifies whom they work for or assigned them to the site.  (Chien Aff., ¶48).  As evidenced by FH Inc.'s Daily Sign-In sheets, for every single day that Plaintiffs worked at the 22nd Street Construction Project, they each consistently listed "PM," presumably Performance Master, as their "Organization/Company" and not FH Inc. or FH LLC.  (Chien Aff., Ex. E).

Courts have distinguished between circumstances where "the putative joint employer maintains specific standards to which its [sub]contractors and the [sub]contractors' employees must adhere … which does not itself establish control of work conditions, and circumstances where the putative joint employer is responsible for the day-to-day management of the [sub]contractor's employees."  *Monzano-Moreno v. Libqual Fence Co*., 2021 U.S. Dist. LEXIS 24937, *33 (E.D.N.Y. Feb. 5, 2021). Here, Defendant Samuel's role as Competent Person for site safety purposes does not establish day-to-day management, control or supervision over Plaintiffs that rise to the level of joint employment.  The safety orientation sheet and the daily Sign-In sheets do not exhibit the kind of control over the Plaintiffs' day to day employment, particularly when its specific purpose is for compliance with OSHA and DOB safety regulations.  Indeed, Plaintiffs have no evidence that these safety control measures were ever directly used to control their employment or ability to perform their work rather than for purposes of ensuring that all laborers (and not just Plaintiffs who were sent over by Performance Master) at the 22nd Street Construction Project were informed of the safety measures and guidelines.

Indeed, the Second Circuit has recognized that "supervision with respect to contractual warranties of quality and time of delivery has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement."  *Gil v. Pizzarotti, LLC*, 2021 U.S. Dist. LEXIS 59668, *30 (S.D.N.Y. Mar 29, 2021). This same

conclusion has been reached many times in other cases where summary judgment has been granted to contractors like FH Inc. on the issue of joint employment. *See*, *e.g.*, *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 427 (S.D.N.Y. Sept. 27, 2017)("That Sprint may have conducted or directed evaluations of field agents, monitoring their productivity and compliance, does not establish control, as such quality control efforts differ from day-to-day control."); *Hugee v. SJC group, Inc.*, No. 13-CV-0423, 2013 U.S. Dist. LEXIS 116471, 2013 WL 4399226, at *5-6 (S.D.N.Y. Aug. 14, 2013) (holding that supervision for purposes of quality control does not support a finding of joint employer status); *Jean-Louis v. Metro. Cable Communs., Inc.*, 838 F. Supp. 2d 111 (S.D.N.Y. Sept. 30, 2011)(records relating to technicians' installation jobs do not translate into per hour compensation but only for quality control purposes).  Thus, Defendant Samuel's presence as the site's Competent Person, the safety orientation sheets and the daily Sign-In sheets for the 22nd Street Construction Project do not establish a joint employer status for the Horsemen Defendants.

3.    *Defendants FH Inc. And Chien Did Not Determine The Rate Or Method Of Plaintiffs' Compensation*

Under the third factor, the Court must consider whether the Horsemen Defendants determined Plaintiffs' rate and method of payment. "[T]he test is whether a putative joint employer determines pay rates, not whether it affects them." *Gil*, *supra*, 2021 U.S. Dist. LEXIS at 33.  Here, Plaintiffs admit that on a weekly basis, they received cash payments from Defendant Angel Zhiminaicela who would distribute cash payments to Plaintiffs.  (Montoya Decl. at Exs. C1-C9, Response to Interrogatory No. 7).  While some of the Plaintiffs also state that they would occasionally receive cash payments from other individuals, they do not recall who those individuals are.  (Montoya Decl. at Exs. C1-C9. Response to Interrogatory No. 7).  At summary

judgment, such assertions are insufficient to overcome a dispositive motion. *Lin, supra,* 2022 U.S. Dist. LEXIS 62413, at *5-6 .

Further, Plaintiffs cannot refute that neither FH Inc. nor Chien had any knowledge of the rates, methods, calculations and/or timing by which Plaintiffs were paid by Performance Master. (Chien Aff. at ¶¶10, 29, 34 and 57).   All of FH Inc.'s employees are paid by ADP.  (Chien Aff. at ¶37).   Defendant Chien did not distribute any wage payments at the 22nd Street Construction Project and Defendant Samuel was not authorized to do so.  (Chien Aff., ¶¶39,55).  None of the Plaintiffs appear in any of FH Inc.'s employee records, certified payroll records for the 22nd Street Construction Project, or on FH Inc.'s electronic timekeeping logs maintained for payroll purposes. (Chien Aff., ¶34).

Notably, it is undisputed that pursuant to the Sub-Subcontract Agreement, DHC was required to pay Performance Master the cost of performing the scope of work. (*See* Chien Aff. ¶23; Ex. C at p. 10). The Sub-Subcontract Agreement also specified that DHC make periodic progress payments to Performance Master for the work performed subject to a determination by DHC of the percentage of completion and substantial completion. *See* Chien Aff. ¶23; Ex. C at p. 3).  Upon receiving progress payments, Performance Master was to provide a partial lien waiver to DHC, which Performance Master continuously provided throughout their work at the 22nd Street Construction Project.  (*See* Chien Aff., ¶¶22, 26; Exs. C at p. 8, §19, D).  Critically, the lien waiver expressly states that Performance Master "represents and warrants that "all amounts due … in connection with the [22nd Street Construction] Project (any *labor*, materials, *services* or equipment related thereto) have been paid in full or are otherwise satisfied and that it does not owe any sums to any such parties in connection with the Project) …."  (*See* Chien Aff., ¶ 26; Ex. D)(emphasis added). At the very least, these documents irrefutably establish that Plaintiffs' compensation and

method of compensation are not decided by Defendants FH Inc. and Chien.  Indeed, Defendants FH Inc. and Chien are not even in a contractual relationship with Performance Master; Performance Master is a sub-subcontractor for DHC.  Given these facts and the foregoing authorities, it is clear that the third "formal control" factor weighs against a finding of joint employment.

> 4.    *Defendants FH Inc. and Chien Did Not Maintain Employment Records For Plaintiffs.*

It is well-established that maintenance of employment records favor a finding of a joint employment relationship.  *Gil*, *supra*, 2021 U.S. Dist. LEXIS at 36.  *Id.*  In *Gil*, defendants "sign[ed] off on" plaintiffs' timesheets, "verif[ied] the number of hours worked," and "provide[d] records of the hours worked" to the subcontractor, which used the records to compensate plaintiffs on a per-hour basis. *Id.*  In contrast, here, Defendants FH Inc. and Chien did not sign off on any timesheets for payroll purposes.  (Chien Aff., ¶¶40,41).  As discussed in Point II. C *supra*, the safety orientation sheets and daily Sign-In sheets were used for OSHA and DOB purposes, and not for payroll purposes.  (Chien Aff., ¶47).  None of the Plaintiffs appear in any of FH Inc.'s employee records, certified payroll records for the 22nd Street Construction Project, or on FH Inc.'s electronic timekeeping logs maintained for payroll purposes.  (Chien Aff., ¶34).  Thus, there is simply no factual basis to support a finding that FH Inc. or Chien acted as a joint employer under this factor.

> D.    The Horsemen Defendants Did Not Exercise "Functional Control" Over Plaintiffs' Work Under the *Zheng* Factors

The "functional control" standards identified by the Second Circuit in *Zheng* also weigh heavily against a finding that Defendants FH Inc. and Chien acted as joint employers.  These factors are (1) whether the defendants' premises and equipment were used for plaintiffs' work; (2) whether the defendants had a business that could or did shift as a unit from one putative joint

employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to the defendants' process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the defendants or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the defendants. *Zheng*, *supra*, 355 F.2d at 72.

Further, the Second Circuit noted that solely focusing on the formal right to control the physical performance of another's work is too narrow a test on which to determine an employment relationship. *Zheng*, *supra*, 355 F.2d at 69. Thus, a court must examine the "circumstances viewed in light of the economic reality" of the whole activity. *Zheng*, at 71, citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 724 (1947). In *Rutherford*, the Supreme Court held that a slaughterhouse jointly employed workers who de-boned meat on its premises, despite the fact that a boning supervisor, who entered into a contract with the slaughterhouse, directly controlled the terms and cons of the meat boners' employment. *Rutherford* is distinguishable from the instant case because FH Inc., FH LLC and Chien did not directly control Plaintiffs' work or kept a close touch on their work.

1.    *Plaintiffs Did Not Use The Horsemen Defendants' Premises Or Receive Equipment Directly From The Horsemen Defendants*

"Whether a putative joint employer's premises and equipment are used by its putative joint employees is relevant because the shared use of premises and equipment may support the inference that a putative joint employer has functional control over plaintiffs' work." *Zheng, supra*, 355 F.3d at 72. While it is undisputed that Plaintiffs worked at the 22nd Street Construction Project, that site is not owned by the Horsemen Defendants. (Chien Aff. ¶13, 14). Defendant FH Inc. was the general contractor for the 22nd Street Construction Project, but not its owner. (Chien Aff. ¶4). Further, the Horsemen Defendants did not provide any tools or equipment for the tasks performed

23

by Plaintiffs.  (Chien Aff. ¶42) Therefore, the first factor does not weigh in favor of the FH Inc.

being Plaintiffs' joint employer, much less Chien or FH LLC.

2.  *Plaintiffs' Labor Did Not Shift as a Unit From One Putative Joint Employer to Another*

The second "functional control" examines whether Plaintiffs' labor could or did shift as a

unit from one putative employer to another. *Zheng, supra*, 355 F.3d at 72.  This factor "is relevant

because a subcontractor that seeks business from a variety of contractors is less likely to be part of

a subterfuge arrangement than a subcontractor that serves a single client." *Id.*  Here, none of the

sub-subcontractors worked exclusively for the Horsemen Defendants.  The sub-contractors and

sub-subcontractor agreements were limited to the 22nd Street Construction Project and did not

prohibit the subcontractor and sub-subcontractors from working with other general contractors

similar to the Horsemen Defendants.  Significantly, the "Performance Master Work Log" reflects

that Plaintiffs worked at the "Job Site: Halsey" on the same day that they were purportedly working

at the 22nd Street Construction Project.  (Montoya Decl., Ex. B).  Thus, this factor weighs in favor

of Horsemen Defendants' argument against joint employment.  *See e.g., Jean-Louis*, *supra*

(functional control not satisfied where subcontractor had own resources, sought work from other

companies and provided services to others).  The circumstances herein do not satisfy this factor.

3.  *Plaintiffs Did Not Perform "Discrete Line-Job" Work Integral to the Horsemen Defendants' Production Process*

The third factor of the functional control test examines "the extent to which plaintiffs

performed a discrete line-job that was integral to [the purported joint employer's] process of

production." *Zheng*, 355 F.3d at 72.  However, "this factor could be said to be implicated in every

subcontracting relationship, because all subcontractors perform a function that a general contractor

deems 'integral' to a product or service." *Zheng*, 355 F.3d at 73.  Thus, analysis of this factor is

viewed through a spectrum where one end requires minimal training and the other end requires

24

specialized skills or technology. *Id.* Indeed, "courts have questioned whether this factor translates well outside of the production line employment situation." *Godlewska v. HDA*, 916 F.Supp. 2d 246, 263 (E.D.N.Y. 2013). Further, the Second Circuit refused to give "heightened scrutiny" to just any work on a production line specifically because they were "mindful of the substantial and valuable place that outsourcing, along with the subcontracting relationships that follow from outsourcing, have come to occupy in the American economy." *Zheng, supra*, 355 F.3d at 73. In determining the weight and degree of this factor, the *Zheng* Court stated that "both industry custom and historical practice should be consulted." The Court further noted that "industry custom may be relevant because, insofar as the practice of using subcontractors to complete a particular task is widespread, it is unlikely to be a mere subterfuge to avoid complying with labor laws." *Id.*

Here, it is normal practice for the Horsemen Defendants to contract with a subcontractor for work at the 22nd Street Construction Project, including DHC. (Chien Aff. at ¶¶8,15). Subsequently, DHC exercised its right to further subcontract with Performance Master. (Chien Aff., ¶22). DHC could have chosen to sub-subcontract with any other entity aside from Performance Master to which the Horsemen Defendants have no control. Thus, any finding of joint employment based on this factor undercuts "industry custom and historical practice. . . because insofar as the practice of using subcontractors to complete a particular task is widespread, it is unlikely to be a mere subterfuge to avoid complying with labor laws." *Zheng, supra,* 355 F.3d at 73-74. The Horsemen Defendants' arrangements with subcontractors should not amount to a finding of joint employment herein.

4.    *The Responsibilities Under the Sub-Subcontract Could Not Pass to Another Subcontractor "Without Material Changes".*

The fourth "functional control" factor is whether responsibility under the contracts could pass from one subcontractor to another without material changes. *Zheng*, *supra*, 355 F.2d at 72.

Where "employees work for an entity (the purported joint employer) only to the extent that their direct employer is hired by that entity, this factor does not in any way support the determination that a joint employment relationship exists." *Id*. In the case at bar, this is the exact situation.

Here, there were absolutely no ties between Plaintiffs and the Horsemen Defendants to allow Plaintiffs to continue working on the 22nd Street Construction Project as the Horsemen Defendants relied on their subcontractors and sub-subcontractors to staff the 22nd Street Construction Project.  Plaintiffs' names appear on the Performance Master Work Log.  (Montoya Decl.; Ex. B).  On FH Inc.'s daily Sign-In sheets, Plaintiffs indicated that the organization or company they work for is "PM," which is presumably Performance Master.  (Chien Aff., Ex. E). Performance is a sub-subcontractor of DHC.  (Chien Aff., Ex. C).  DHC is not a party in this case. In other words, the Horsemen Defendants' contracted with subcontractors to perform the work needed and not with specific individual corporations. Thus, the fourth factor does not weigh in favor of a joint employment relationship.  *See Hugee v. SJC Grp., Inc.*, 2013 U.S. Dist. LEXIS 116471, at *26 (S.D.N.Y. Aug. 13, 2013)(the fifth Zheng factor weighed against joint employment where plaintiff could not maintain relationship with the putative joint employer if terminated by direct employer).

　　　　5.　　　*The Horsemen Defendants Did Not Supervise Plaintiffs' Labor.*

The fifth factor is the degree to which the alleged joint employer or their agents supervised the plaintiffs' work.  *Zheng*, *supra*, 355 F.2d at 72.  As extensively discussed in Point II, C,  *supra*, the evidence does not support a finding of joint employment under this factor.

　　　　6.　　　*Plaintiffs Were Not Required To Perform Work Exclusively For Defendants.*

The sixth and final *Zheng* "functional control" factor is whether the contractor "had a business that could or did shift as a unit from one putative joint employer to another." *Zheng, supra*, 355 F.3d at 72. Here, FH Inc., DHC and Performance Master were businesses independent

26

from each other.  (Chien Aff. at ¶¶ 20, 31).  Nothing in the Subcontract Agreement between FH Inc. and DHC, or in the respective Sub-Subcontract agreement between DHC and Performance Master, prohibited Performance Master's employees from performing construction services or other work for entities other than Defendants.  Thus, this factor does not weigh in favor of a joint employment relationship. Taking all the factors of the "functional control" and "formal control" tests, it is clear that the Horsemen Defendants are not the joint employer of Plaintiffs. Summary judgment must be awarded to the Horsemen Defendants.

## POINT III

### THE HORSEMEN DEFENDANTS ARE ENTITLED TO
### SUMMARY JUDGMENT ON THE NEW YORK LABOR LAW CLAIMS

The legal issues related to Plaintiffs state-law causes of actions are governed by the same standards as those applicable to their FLSA claims and the same analysis above applies to the NYLL claims. "There is general support for giving [the] FLSA and the New York Labor Law consistent interpretations." *Topo v. Dhir*, 2004 U.S. Dist. LEXIS 4134, *10 (S.D.N.Y. Mar. 15, 2004), citing *Ansoumana v. Gristede's Operating Corp.,* 255 F. Supp. 2d 184, 189 (S.D.N.Y. Jan. 28, 2003) ("Because New York Labor Law and the FLSA embody similar standards with respect to the legal issues before [the Court], [the Court] will consider the federal law in deciding [the issue."). As analyzed above in Point II above, Plaintiffs cannot meet their burden of showing that the Horsemen Defendants were their direct employer or their joint employer under the FLSA. Thus, Plaintiff's NYLL claims are also deficient and the Horsemen Defendants are entitled to summary judgment.

**POINT IV**

**THE COURT SHOULD NOT EXERCISE**
**<u>SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' CLAIMS UNDER THE NYLL</u>**

As argued in Points I and II, *supra*, Plaintiffs' FLSA claims cannot stand.  Accordingly,

this Court should decline to exercise supplemental jurisdiction over Plaintiffs' claims pursuant to

the NYLL.  A court may decline to exercise supplemental jurisdiction over NYLL claims where

there can be no relief under the FLSA.  *See*, e.g., 28 U.S.C. § 1367(c)(3) ("The district courts may

decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court

has dismissed all claims over which it has original jurisdiction."); *see also Kaplan v. Wings of*

*Hope Residence*, 2020 U.S. Dist. LEXIS 22374, *12-13 (E.D.N.Y. Feb. 7, 2020)(declining to

exercise supplemental jurisdiction over NYLL claims after dismissing FLSA claims); *Baguidy v.*

*Boro Transit, Inc*., 283 F. Supp. 3d 14, 33 (E.D.N.Y. Sep. 30,  2017)(same). Judicial economy,

convenience and fairness militate against exercising supplemental jurisdiction over Plaintiffs'

NYLL claims against the Horsemen Defendants.

## <u>CONCLUSION</u>

For the reasons set forth above, all causes of actions against the Horsemen Defendants should be dismissed in their entirety with costs and disbursements.

Dated:  New York, New York
       January 12, 2024

                    **HINSHAW & CULBERTSON LLP**
*Attorneys for Defendants Five Horsemen Construction Inc., Five Horsemen LLC, and Ronald Chien*

*/s/ Concepcion A. Montoya*
Concepcion A. Montoya
Kelechi Ajoku
800    Third    Avenue,    13th    Floor
New York, New York 10022
Tel: 212-471-6200