UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISRAEL CAMEY MORALES et al.,<br><br>                           Plaintiffs,<br><br>    -against-<br><br>PERFORMANCE MASTER, INC. et al.,<br><br>                           Defendant. | 21-cv-97 (AS)<br><br><u>OPINION AND ORDER</u> |

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

Plaintiffs are ten construction workers who have sued for violations of the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL). Second Am. Compl. ¶¶ 1–17, 179–206, Dkt. 49. They allege that Defendants were their employers and failed to pay overtime and minimum wages (violations of both the FLSA and NYLL) and failed to provide wage notices and statements (violations of the NYLL). *Id.*

Two sets of Defendants have moved for summary judgment (all but one of the other Defendants have not appeared). Dkts. 101, 110. The first group is the "Horsemen Defendants": Five Horsemen Construction Inc. (the general contractor), Ronald Chien (its principal), and Five Horsemen LLC (its affiliate). The second group is the "JDM Defendants": J.D.M. Marmol & Granite Corp. and its principal, Marcos Zhiminaicela (incorrectly listed as "Marcus" in the complaint, *see* Dkt. 110-1 ¶ 1).

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up).

But if the nonmovant will bear the burden of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That evidence must be "hard evidence," neither "mere conclusory allegations nor speculation." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). And "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. The moving party shifts the burden onto the nonmoving party to make its case by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Here, "[t]he moving part[ies] [are] entitled to a judgment as a matter of law because the non-moving part[ies] ha[ve] failed to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof." *Id.* at 323. Plaintiffs took essentially no discovery: Zero depositions were taken by either side. Dkt. 112 at 5. Two documentary exhibits were submitted with these motions' briefs. *See* Dkt. 110-11; Dkt. 114-2. Three covertly recorded videos of alleged "work meetings" (just people standing around on a worksite and talking) were submitted by Plaintiffs, but they have no context, and the Horsemen Defendants object that they were never produced in discovery. *See* Dkt. 112-2; Dkt. 119. On this motion, Plaintiffs rely on these materials as well as two (identical) affidavits from two plaintiffs and the affidavits and other materials submitted by Defendants. Ultimately, this "complete failure of proof … necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## DISCUSSION

Defendants move for summary judgment on two theories. First, they say they weren't Plaintiffs' employers, so they can't be held liable under the FLSA or NYLL. Second, they say Plaintiffs' claims were untimely because they failed to file written consents within the statute of limitations. Because the first ground is sufficient, the Court doesn't reach the second.

### I.  The joint-employment test

The FLSA and NYLL impose duties on "employer[s]." *See, e.g.*, 29 U.S.C. § 206. Under the FLSA, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." § 203(d). And to "employ" means "to suffer or permit to work." § 203(g). This language has been read "expansive[ly]." *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 69 (2d Cir. 2003). But "the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citations omitted). And the parties agree that the same standards apply under the FLSA and NYLL. *See* Dkt. 104 at 14; Dkt. 112 at 15.

Plaintiffs bear the burden of showing an "employer-employee relationship with Defendants." *Alladin v. Paramount Mgmt., LLC*, 2013 WL 4526002, at *3 (S.D.N.Y. Aug. 27, 2013). Here, Plaintiffs claim that Defendants were joint employers. Dkt. 112 at 13. To evaluate this relationship, the Second Circuit has developed two multifactor tests. The first is the "formal control" test, also known as the *Carter* factors. The second is the "functional control" test, also known as the *Zheng* factors.

The formal-control test asks "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (citation omitted).

The functional-control test asks "(1) whether [the purported joint employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [direct employer] had a business that

could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the purported joint employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [purported joint employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the purported joint employer]." *Zheng*, 355 F.3d at 72.

If a district court is not satisfied with just ten factors to apply, it "is also free to consider any other factors it deems relevant to its assessment of the economic realities." *Id.* at 71–72. And the ultimate determination is based on the "totality of the circumstances." *Id.* at 76.

A plaintiff "need not satisfy all of [the factors] to demonstrate that a particular defendant is an employer." *Kim v. Kum Gang, Inc.*, 2015 WL 2222438, at *39 (S.D.N.Y. Mar. 19, 2015). Similarly, "to grant summary judgment for defendants, … the Court need not decide that *every* factor weighs against joint employment." *Zheng*, 355 F.3d at 76–77. Sometimes, "even if all reasonable inferences [are] drawn in the plaintiff's favor, there [will be] insufficient evidence in the record on which to base the conclusion that the plaintiff was an employee of the [employer]." *Id.*

## II.    Relevant and admissible evidence

Before applying the factors, the Court makes a few preliminary points about the evidence. First, Plaintiffs rely on the allegations in their complaint. But the complaint "is not verified and its allegations therefore are not evidence for summary judgment purposes." *Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024). "[P]laintiffs cannot meet their burden on summary judgment through reliance on [these] unsupported assertions." *Id.* at 433 (internal quotation marks omitted). And even if the Court considered them, they are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see* Dkt. 112 at 15–16 (quoting, for example, the portion of the complaint alleging that "at all times relevant hereto, the Defendants were Plaintiffs' employers as defined by 29 U.S.C. § 203(d)").

Second, Plaintiffs' affidavits are barebones. To start, they have submitted affidavits from just two of the plaintiffs, and the affidavits are essentially identical. Dkt. 114-1. The affidavits also identify certain people without connecting them to the moving Defendants: Plaintiffs say they were interviewed and paid by someone named Angel Zhiminaicela and that they "recognize him as the supervisor." *Id.* at 1–2, 4 ¶¶ 3–6. They also say someone named Donovan "gave instructions to Angel Zhiminaicela" and that Donovan had some role in controlling the worksite and their pay. *Id.* at 2, 4 ¶¶ 7–11. Yet no part of the affidavits or any other evidence in the summary-judgment record shows any connection between Angel or Donovan and the Horsemen or JDM Defendants.

Third, Plaintiffs rely in part on three videos. The Horsemen Defendants moved to exclude these videos. Dkt. 119. For starters, they weren't produced in discovery, despite the Horsemen Defendants' request for "[a]ll documents … that support Plaintiffs['] contention that an employment relationship existed between Plaintiffs and Five Horsemen Defendants." Dkt. 119-1 ¶ 23. This ground alone is sufficient to exclude the videos given that (1) Plaintiffs haven't explained their

failure to produce them or (2) the videos' importance to Plaintiffs' case, (3) Defendants would be prejudiced by the videos' consideration without the opportunity to depose those who appear in them or otherwise develop a record around the videos, and  (4) a continuance would be unwarranted and prejudicial since discovery closed more than a year ago, it has already taken three years for this highly underdeveloped case to get through summary judgment, and memories continue to fade. *See Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 529 (S.D.N.Y. Sep. 21, 2018). And there are other problems too. For instance, the videos are stamped with a date beyond the period claimed in the complaint. *See* Dkt. 119 at 3. And Plaintiffs have not provided basic information like who took the videos or who appears in them. *Id.* The kicker is that Plaintiffs didn't even respond to Defendants' motion. So the Court will grant the motion and exclude the videos.[1]

## III.    Plaintiffs have not raised a genuine dispute as to whether the Horsemen Defendants were their employers

With those items out of the way, Plaintiffs' potentially relevant evidence that the Horsemen Defendants were their employers is the following: (1) two plaintiffs say they saw some "people of Asian origin who came to the Project periodically" and "[i]t was rumored that they were the owners of the project," Dkt. 114-1 at 2, 9 ¶ 10; (2) these two plaintiffs once "had a meeting with a person of Asian origin and he mentioned that he had made payments to [someone else] and [that person] paid [yet another person] to give us our salary" (seemingly referring to the conversation in one of the videos), Dkt. 114-1 at 2 ¶ 11; *id.* at 4 ¶ 10; (3) Five Horsemen "received progress payments … and lien waivers," Dkt. 112 at 18; and (4) as required of general contractors under New York law, they designated a representative, Joah Samuel, to perform safety checks, conduct safety orientations, maintain a sign-in log, and keep an eye on the "progress of the work," *see* Dkt. 112 at 18–25; *see also* Fed. R. Civ. P. 56(c)(3).

Now turn to the multifactor tests, starting with the formal-control test. Plaintiffs have made no showing with respect to the first factor, hiring and firing. Nor have they made any showing with respect to the first part of the second factor, controlling work schedules.

As for the second part of the second factor, supervision and control of conditions of employment, Five Horsemen did supervise and control the conditions of the worksite in some sense: Five Horsemen made sure the project was going to plan and that it complied with labor and safety laws. But that kind of supervision and control is not the kind that shows an employment relationship.

"[S]upervision weighs in favor of joint employment only if it demonstrates effective control of the terms and conditions of the plaintiff's employment. By contrast, supervision with respect to

---

[1] Even if the Court considered the videos, they would not be enough to defeat Defendants' motions. One video supposedly shows Angel Zhiminaicela, but the video is in Spanish, and Plaintiffs didn't translate it. (Defendants say the people in the video are talking about bringing a lawsuit.) The second video allegedly shows Donovan, but he simply says he will "talk to everybody" later. The third video purportedly shows Chien talking with the Plaintiffs, but Chien denies that it's him in the video. Even assuming it was him, all he said was that he would talk to the person (presumably the subcontractor) who wasn't paying Plaintiffs. Indeed, he says, "I hired him, I didn't hire you guys," and the person he's talking to nods in understanding.

contractual warranties of quality and time of delivery has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement." *Zheng*, 355 F.3d at 75 (citations omitted). "This is especially true where the quality control's purpose is to ensure compliance with the law[.]" *Godlewska v. HDA*, 916 F. Supp. 2d 246, 259–60 (E.D.N.Y. 2013), *aff'd* 561 F. App'x 108 (2d Cir. 2014). "Quality control and compliance-monitoring that stem from the 'nature of the business' … are qualitatively different from control that stems from the nature of the relationship between the employees and the putative employer." *Id.* at 260 (citation omitted).

Just so here. Plaintiffs have cited only Chien's affidavit, which says that Five Horsemen had an onsite representative to oversee the quality and progress of the job as well as to comply with local safety laws. *See* Dkt. 112 at 19–23. Plaintiffs have not shown "that the supervision [they] received from [Five Horsemen] was in relation to the general responsibilities of [the] job [rather than] merely *operations*." *Hugee v. SJC Grp., Inc.*, 2013 WL 4399226, at *6 (S.D.N.Y. Aug. 14, 2013). And those measures to comply with safety laws "stem entirely from the nature of their business of providing heavily regulated" services. *Id.* (citation omitted). Plaintiffs' view would make a general contractor choose between limiting its FLSA liability and complying with local law. But the FLSA requires no such choice; it does not make every general contractor liable for every subcontractor's workers. *See Zheng*, 355 F.3d at 73. So Plaintiffs have not made the right kind of showing for the second factor. *See, e.g.*, *Toledo v. Unibud Restoration Corp.*, 2022 WL 171198, at *2–3 (S.D.N.Y. Jan. 19, 2022) (dismissing a joint-employer claim when the plaintiff "signed a [defendant's] workers log … and attended its safety training"); *Hugee*, 2013 WL 4399226, at *5–7 (rejecting a joint-employer claim when the plaintiff "report[ed] by telephone to [the defendant] each day upon his arrival to and departure from a worksite and to fill out [the defendant's] … timesheets" and the defendant provided "the only training [the plaintiff] ever received").

For the third factor, Plaintiffs have not shown that Five Horsemen determined the rate or method of Plaintiffs' compensation. Plaintiffs say someone "of Asian origin" once said something about their pay. Dkt. 114-1 at 2 ¶ 11, 4 ¶ 10. But that barebones assertion is far from establishing that Chien or anyone from Five Horsemen had anything to do with establishing the rate and method of their pay. If anything, Plaintiffs' description itself (that the "person of Asian origin" talked about paying an intermediary) shows that the person was higher up the food chain and didn't seem to have anything to do with the rate and method of Plaintiffs' pay.

On the fourth factor, Plaintiffs have failed to show that Five Horsemen maintained their employment records. Five Horsemen had a sign-in sheet, but as noted above, it was used only to comply with regulations. Dkt. 103 ¶ 47. It had nothing to do with payroll or anything else that might show control over Plaintiffs. *Id.* Again, if anything, it shows that Five Horsemen were not Plaintiffs' employers: the sheet had a column for "organization/company," and none of the Plaintiffs ever put "Five Horsemen" in that column. *See* Dkt. 103-5; *see also* Dkt. 110-11.

So for the formal-control test, Plaintiffs have no factor in their favor.

Proceeding to the functional-control test, Plaintiffs have again failed to tip any factor to their side. On the first factor, they have no evidence that the site was Five Horsemen's "premises" or that it provided any tools. Plaintiffs say it was "rumored" that some "people of Asian origin" were the "owners of the Project." Dkt. 114-1 at 2 ¶ 10, 4 ¶ 9. Again, this is far from showing that the Horsemen Defendants (who admittedly ran the project by virtue of being the general contractor) owned the premises.

On the second, they have no evidence that their labor shifted from one joint employer to another. They refer to "labor sharing" without citation in their brief, and the "progress payments" and "lien waivers" don't seem to indicate any control beyond that of a typical subcontracting relationship. Dkt. 112 at 18.

For the third and fourth factors, Plaintiffs have not argued or shown that they performed any "discrete line-job" work or that responsibility could pass between subcontractors without material changes. *Zheng*, 355 F.3d at 72. Fifth, they haven't shown that Five Horsemen supervised their work in the relevant sense, as discussed above. Sixth, there's no indication that Plaintiffs were required to work exclusively or predominantly for Five Horsemen. And Plaintiffs have not pointed to any other factor or evidence that might reflect the "economic reality" of the situation.

Because Plaintiffs have not raised a genuine dispute with respect to any of the ten factors, the Horsemen Defendants are entitled to summary judgment.[2]

## IV.   Plaintiffs have not raised a genuine dispute as to whether the JDM Defendants were their employers

The story is much the same for the JDM Defendants. At the outset, however, JDM asserts one fact that seems genuinely disputed. The JDM Defendants say they never had anything to do with the construction project at issue. But one of the very few documents produced for this motion suggests a different story: it is a check from Performance Master (the main subcontractor and a non-appearing Defendant in this case) made out to JDM Marmol "FOR: East 22 subcontract" in December 2019 (the project at issue here was on that street and at that time). Dkt. 114-2 at 8.

In any event, even if the JDM Defendants worked on the project, Plaintiffs haven't shown that JDM was their employer. As Plaintiffs point out, "FH Defendants routinely hire[d] various subcontractors," so JDM's working on the site doesn't automatically link them to Plaintiffs. Dkt. 114 at 17. And though defendant Marcos Zhiminaicela, JDM's principal, and Angel share a last name, there's nothing in the record linking the two. Relatedly, Plaintiffs assert that the sign-in sheet that the JDM Defendants attached to their motion "show[s] … both Marcus [*sic*] and Angel … working essentially alongside Plaintiffs." Dkt. 114 at 15 (citing Dkt. 110-11). But the Court struggles to connect the dots. Neither name appears on the sign-in sheets. "Marcos Mercado" and "Angel

---

[2] This goes for all the Horsemen Defendants, but Plaintiffs have also failed to respond to the argument that Five Horsemen LLC (as opposed to the corporation) had nothing to do with the project at issue. Dkt. 113 ¶ 6. Plaintiffs simply respond "deny" in their Local Rule 56.1 statement, but that is not enough to raise a genuine dispute. *See* Fed. R. Civ. P. 56(c)(1); Local Civ. R. 56.1(d).

Arana" appear on the sheets, but there are no Zhiminaicelas. Dkt. 110-11. And every row of the "organization/company" column is filled in with "PM," presumably referring to Performance Master. *Id.*

Finally, Plaintiffs point to Joah Samuel's declaration submitted earlier in this case. Recall that Samuel was Five Horsemen's representative on the site. More than two years ago, he moved to dismiss himself as a defendant. Dkt. 59. With that motion, he submitted a declaration that said, "This matter involves the companies listed and the workers that are suing.… This lawsuit does not apply to me …. This suit is between the workers and the compan[ies] they worked with, Performance Master Inc. and J.D.M. Marmol." Dkt. 60. This declaration is not enough to create a genuine dispute. To start, it's not clear whether Samuel is actually asserting that JDM was Plaintiffs' employer rather than simply looking at the list of Defendants in this case and saying, "It was them, not me." And of course, Plaintiffs made no effort to clarify this question by deposing Samuel (or anyone else). Nor is there evidence that Samuel had any knowledge of who employed whom. If anything, these ambiguous statements from one self-interested declaration make up a "scintilla" of evidence, which can't defeat summary judgment.

So Plaintiffs have again failed to raise a genuine dispute with respect to any of the ten factors, and summary judgment is warranted.

## V.   Plaintiffs will be heard on how to handle the remaining Defendants

After granting summary judgment for these two groups of Defendants, six others remain. The only one to appear is Samuel. But as explained above, he was Five Horsemen's representative. So if Five Horsemen was not Plaintiffs' employer, it would seem that he could not be held liable as their employer either. The other five are Performance Master and four individuals, including Angel Zhiminaicela.

Plaintiffs will have the opportunity to be heard as to how the Court should deal with these Defendants. Plaintiffs should first address whether summary judgment should be granted in favor of Samuel. Although he didn't move for summary judgment, courts routinely grant summary judgment sua sponte in favor of similarly situated defendants. *See, e.g., Diarama Trading Co., Inc. v. J. Walter Thompson USA, Inc.*, 2005 WL 2148925, at *14 (S.D.N.Y. Sept. 6, 2005), *aff'd*, 194 F. App'x. 81 (2d Cir. 2006); *see also Pugh v. Goord*, 345 F.3d 121, 124 (2d Cir. 2003) ("A sua sponte award of summary judgment may well be appropriate if it is clear that all of the evidentiary material a party might submit is before the court and no material issue of fact exists.").

For the five other defendants, Plaintiffs should address whether their claims should be dismissed for failure to prosecute and failure to follow court orders. *See* Fed. R. Civ. P. 41(b). When the Court asked the parties for a status update in December 2023, Plaintiffs said they "intend[ed] to move for a default judgment as against any non-appearing defendants." Dkt. 97 at 2. The Court then set one deadline for both default- and summary-judgment motions. Dkt. 98. Plaintiffs have failed to file any default-judgment motion. The case has now been pending for more than three years, with little to no development of the record or any other efforts to move this case along. In

arguing that the Court should not dismiss their claims, Plaintiffs should address the five factors laid out in *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004).

## VI.   Counsel for the Five Horsemen and JDM Defendants must show cause why they should not be sanctioned

Although successful on their motions, the Horsemen and JDM Defendants may have overstated their cases. As noted, Chien said he was not the person in Plaintiffs' video, Dkt. 119 at 3 n.5, and Marcos Zhiminaicela swore that he and his company had nothing to do with this project, Dkt. 110-1 ¶ 7. Yet it would be strange for anyone other than Chien to be talking about how he hired and paid all the subcontractors when Chien is the "sole owner" of Five Horsemen. Dkt. 103 ¶ 2. And it is also odd that JDM would get a check for $15,000 from Performance Master for "East 22 subcontract," Dkt. 114-2 at 8, if it never "performed any work" on the project at issue in this case, Dkt. 110-1 ¶ 7.

Of course, Defendants might well have innocent explanations. But the Court would like to hear them. And the lawyers are reminded that "[b]y presenting to the court a … paper—whether by signing, filing, submitting, or later advocating it—an attorney … certifies that to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). So the Court will order counsel for both the Horsemen and JDM Defendants to "show cause why the[ir] conduct … has not violated Rule 11(b)." Fed. R. Civ. P. 11(c).

## CONCLUSION

For these reasons, Defendants' motions for summary judgment are GRANTED. The Clerk of Court is directed to terminate Defendants Five Horsemen Construction Inc., Five Horsemen LLC, Ronald Chien, J.D.M. Marmol & Granite Corp., and Marcos Zhiminaicela from the docket and to close Dkts. 101, 110, and 111. Defendants' motion to preclude is also GRANTED. The Clerk of Court is directed to close Dkt. 119.

By June 14, 2024, Plaintiffs may submit a letter, not to exceed five double-spaced pages, addressing whether the Court should dismiss the claims against the remaining Defendants.

By June 14, 2024, counsel for the Horsemen and JDM Defendants shall submit letters, not to exceed five double-spaced pages, showing cause why they should not be sanctioned.

SO ORDERED.

Dated: June 6, 2024
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge