UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
ISRAEL CAMEY MORALES, HECTOR MARTINEZ, LUIS
MAURAT, ISAIAS NOE HERRERA, RIGOBERTO
ALFARO, ANGEL ARANA, ALBERTO MORALES,
CARLOS GUARDODA, GONZALO CORDOBA, and SAUL
REYES RAMOS, individually and on behalf of all others
similarly situated,

Civil Docket No.:
1:21-cv-00097-AS

**MEMORANDUM OF LAW**

Plaintiffs,

-against-

PERFORMANCE MASTER, INC. and DORREL
COUSINS, LESLIE REID, DAVID ALLEN, and
ANGEL ZHIMINAICELA, as individuals,

Defendants.

------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR ENTRY OF A DEFAULT JUDGMENT IN A SUM CERTAIN
AGAINST *PERFORMANCE MASTER, INC. and DORREL COUSINS,
LESLIE REID, and ANGEL ZHIMINAICELA, as individuals***

**Helen F. Dalton & Associates, P.C.**
*Attorneys for the Plaintiffs*
80-02 Kew Gardens Road, Suite 601
Kew Gardens, New York 11415
Tel.: (718) 263-9591

## I.    <u>PRELIMINARY STATEMENT</u>

This Memorandum of Law is respectfully submitted in support of the Plaintiffs' instant Motion for an Order entering default judgment in a sum certain against the Defendants, PERFORMANCE MASTER INC. ("<u>Performance Master</u>"), DORREL COUSINS ("Mr. Cousins"), LESLIE REID ("Ms. Reid") and ANGEL ZHIMINAICELA ("Mr. Zhiminaicela"), as individuals, (collectively hereinafter referred to as, the <u>Defendants</u>"), pursuant to Federal Rule of Civil Procedure (FRCP) 55(b)(2) and Local Civil Rule 55.2(b). As established herein, the Plaintiffs have demonstrated their entitlement to the entry of a default judgment as against the Defendants in this Action, in addition to the amount of the Plaintiffs' damages due in a sum certain arising from the Defendants' default herein.

The procedural history of this matter is set forth in the Affirmation of Roman Avshalumov, Esq., dated July 17, 2024, and is fully incorporated by reference herein.

## II.    <u>FACTUAL BACKGROUND</u>

For purposes of this motion, factual matters stated herein are drawn, in chief, from Plaintiffs' FLSA Complaint, filed on January 6, 2021 (*see* **Exhibit A**); Plaintiffs' First Amended Complaint filed on November 4, 2024 (*see* **Exhibit C**); and Plaintiffs' Second Amended Complaint filed on January 24, 2022 (*see* **Exhibit H**).

Plaintiffs all performed work for Defendants at, *without limitation*, a job site located at 325-327 East 22nd Street, New York, New York 10010 (hereinafter, the "job site"). Ex. H ¶ 18.

Plaintiff **ISRAEL CAMEY MORALES** ("Plaintiff"), is a former employee of the Defendants, who worked for Mr. Cousins, Ms. Reid, and Mr. Zhiminaicela at Performance Master, Inc., performing carpentry, and other miscellaneous duties for the Defendants such as construction work and pouring concrete, from in or around June 2019 until in or around February 2020. Ex. H ¶ 1;7;10;106-107; Ex. N ¶ 1.

Plaintiff **HECTOR MARTINEZ** ("Plaintiff"), is a former employee of the Defendants, who worked for Mr. Cousins, Ms. Reid, and Mr. Zhiminaicela at Performance Master, Inc., performing rebar work, and other miscellaneous duties for the Defendants such as construction work and pouring concrete, from in or around June 2019 until in or around March 2020. Ex. H ¶ 1;7;11;111-112.

Plaintiff **LUIS MAURAT** ("Plaintiff"), is a former employee of the Defendants, who worked for Mr. Cousins, Ms. Reid, and Mr. Zhiminaicela at Performance Master, Inc., performing carpentry, and other miscellaneous duties for the Defendants, from in or around June 2019 until in or around February 2020. Ex. H ¶ 1;7;17;117-118; Ex. O ¶ 2.

Plaintiff **ISAIAS NOE HERRERA** ("Plaintiff"), is a former employee of the Defendants, who worked for Mr. Cousins, Ms. Reid, and Mr. Zhiminaicela at Performance Master, Inc., performing carpentry, and other miscellaneous duties for the Defendants, from in or around June 2019 until in or around February 2020. Ex. H ¶ 1;7;16;123-124.

Plaintiff **RIGOBERTO ALFARO** ("Plaintiff"), is a former employee of the Defendants, who worked for Mr. Cousins, Ms. Reid, and Mr. Zhiminaicela at Performance Master, Inc., performing carpentry, and other miscellaneous duties for the Defendants, from in or around June 2019 until in or around February 2020. Ex. H ¶ 1;7;15;128-129; Ex. P ¶ 2.

Plaintiff **ANGEL ARANA** ("Plaintiff"), is a former employee of the Defendants, who worked for Mr. Cousins, Ms. Reid, and Mr. Zhiminaicela at Performance Master, Inc., performing carpentry, and other miscellaneous duties for the Defendants, from in or around June 2019 until in or around February 2020. Ex. H ¶ 1;7;14;133-134.

Plaintiff **ALBERTO MORALES** ("Plaintiff"), is a former employee of the Defendants, who worked for Mr. Cousins, Ms. Reid, and Mr. Zhiminaicela at Performance Master, Inc., performing carpentry, and other miscellaneous duties for the Defendants, from in or around June 2019 until in or around February 2020. Ex. H ¶ 1;7;13;138-139.

Plaintiff **CARLOS GUARDODA** ("Plaintiff"), is a former employee of the Defendants, who worked for Mr. Cousins, Ms. Reid, and Mr. Zhiminaicela at Performance Master, Inc., performing carpentry and rebar work, and other miscellaneous duties for the Defendants, from in or around June 2019 until in or around February 2020. Ex. H ¶ 1;7;12;143-144.

Plaintiff **GONZALO CORDOBA** ("Plaintiff"), is a former employee of the Defendants, who worked for Mr. Cousins, Ms. Reid, and Mr. Zhiminaicela at Performance Master, Inc., performing work as a porter, and other miscellaneous duties for the Defendants, from in or around November 2018 until in or around March 2020. Ex. H ¶ 1;7;9;148-149.

Plaintiff **SAUL REYES RAMOS** ("Plaintiff"), is a former employee of the Defendants, who worked for Mr. Cousins, Ms. Reid, and Mr. Zhiminaicela at Performance Master, Inc., performing carpentry, construction and rebar work, and other miscellaneous duties for the Defendants, from in or around February 2020 until in or around March 2020. Ex. H ¶ 1;7;8;154-155.

Performance Master is a domestic business corporation, organized pursuant to the laws of the State of New York, with a principal executive office and place of business located at 1950 Lafayette Avenue, P.O. Box 270, Bronx, New York 10473 and also 1579 Metropolitan Avenue, Apt #8D Bronx, NY 10462.  Ex. H ¶¶ 46-47.

During all relevant times hereto, Performance Master, was the sub-contractor in job sites where Plaintiffs performed work and the entity responsible for *labor*, among others at the job site. (*see* **Exhibit M**).

Plaintiffs' Complaint further alleged that Performance Master is, at present, and has been at all times relevant to the allegations in the complaint, an enterprise engaged in interstate commerce within the meaning of the FLSA in that the entity (i) has had employees engaged in commerce or in the production of goods for commerce, and handle, sell or otherwise work on goods or material that have been moved in or produced for commerce by any person: and (ii) has had an annual gross volume of sales of not less than $500,000.00 (*see*, 29 U.S.C. §§ 203(b); 203(s)(1)(A); C.F.R. § 779.103). Ex. H ¶ 67. For example, it has employed approximately 50 to 100 other employees within the relevant time-period, who were also subjected to similar payment structure that violated applicable wage-and-hour laws, including, without limitation, requiring workers to regularly work more than forty hours per week without any overtime compensation. See Ex. H ¶ 167.

Individual Defendants, **Mr. Cousins and Ms. Reid**, are the joint owners of Performance Master, and the day-to-day operators of the Performance Master business. Ex. H ¶¶ 48-50;54, (*see* **Exhibit M**). Moreover, Mr. Cousins and Ms. Reid were and are the corporation's authorized agent (Ex. H ¶ 53); and are the individuals who are responsible

for all of the final personnel, and payroll decisions, of/at Performance Master (Ex. H ¶¶ 55-56).  Mr. Cousins and Ms. Reid's power and authority over all of the final personnel, and payroll decisions, of the business, include, *without limitation*, the exclusive power and authority to hire, fire, and terminate all of its employees, including Plaintiffs; to establish, determine, and pay their wages; set their work schedules, and is the individual responsible for maintaining all of their employment records there (Ex. H ¶ 57-65).  Accordingly, during all relevant times hereto, **Mr. Cousins and Ms. Reid** are the Plaintiffs' individual employers, within the meaning, and intent of the FLSA, and the NYLL.  Ex. H ¶ 66. *See Plaintiffs' Verified Interrogatory Responses, Dkt. Nos. 110-2 to 10.*

During all relevant times hereto, individual Defendant, **Mr. Zhiminaicela**, is Plaintiffs supervisor. Moreover, Mr. Zhiminaicela's has the power and authority over all of the final personnel, and payroll decisions, *without limitation*, the power and authority to hire, fire, and terminate all of its employees, including Plaintiffs; to establish, determine, and pay their wages; set their work schedules at the job site. Plaintiffs have been consistent in identifying Mr. Zhiminaicela, repeatedly, as their supervisor at the job site. Accordingly, during all relevant times hereto, **Mr. Zhiminaicela** is one of Plaintiffs' individual employers, within the meaning, and intent of the FLSA, and the NYLL.  (*see* **Exhibits N, O & P**).  *See Plaintiffs' Verified Interrogatory Responses, Dkt. Nos. 110-2 to 10.*

### Plaintiffs' Factual Allegations

As stated above, the Plaintiffs are former employees of the Defendants, who were employed by the Defendants to perform construction, carpentry, masonry, and other related work for the Defendants, at various times during the period spanning in or around November 2018 to in or around March 2020. See Summary of Claims below:

| Plaintiff | Duties | Date of Employment | Work Hours Per Week | Flat Weekly Rate | Claim/s |
|---|---|---|---|---|---|
| Israel Camey Morales | carpentry, construction work, pouring concrete<br><br>Ex. H ¶ 7, 107 | June 2019 to February 2020<br><br>Ex. H ¶ 7, 10, 106 | Fifty-four (54) hours per week<br><br>Ex. H ¶ 109 | $1,200.00 per week from June 2019 to February 2020<br><br>Ex. H ¶ 108 | Unpaid Overtime<br><br>Ex. H ¶ 110 |
| Hector Martinez | rebar work, construction work, pouring concrete<br><br>Ex. H ¶ 7, 112 | June 2019 to March 2020<br><br>Ex. H ¶ 7, 11, 111 | Fifty-four (54) hours per week<br><br>Ex. H ¶ 114 | $1,500.00 per week from June 2019 to January 2020; and *Nothing Whatsoever, from January 2020 to March 2020*<br><br>Ex. H ¶ 113 | Unpaid minimum wages, unpaid overtime<br><br>Ex. H ¶ 115-116 |
| Luis Maurat | carpentry<br><br>Ex. H ¶ 7, 118 | June 2019 to February 2020<br><br>Ex. H ¶ 7, 17, 117 | Fifty-four (54) hours per week<br><br>Ex. H ¶ 120 | $1,200.00 per week from June 2019 to January 2020; and *Nothing, from January 2020 to February 2020*<br><br>Ex. H ¶ 119 | Unpaid minimum wages, unpaid overtime<br><br>Ex. H ¶ 121-122 |
| Isaias Noe Herrera | carpentry<br><br>Ex. H ¶ 7, 124 | June 2019 to February 2020<br><br>Ex. H ¶ 7, 16, 123 | Fifty-four (54) hours per week<br><br>Ex. H ¶ 126 | $1,200.00 per week from June 2019 to February 2020<br><br>Ex. H ¶ 125 | Unpaid overtime<br><br>Ex. H ¶ 127 |

| | | | | | |
|---|---|---|---|---|---|
| Rigoberto Alfaro | carpentry<br><br>Ex. H ¶ 7, 129 | June 2019 to February 2020<br><br>Ex. H ¶ 7, 15, 128 | Fifty-four (54) hours per week<br><br>Ex. H ¶ 131 | $1,200.00 per week from June 2019 to February 2020<br><br>Ex. H ¶ 130 | Unpaid overtime<br><br>Ex. H ¶ 132 |
| Angel Arana | carpentry<br><br>Ex. H ¶ 7, 134 | June 2019 to February 2020<br><br>Ex. H ¶ 7, 14, 133 | Fifty-four (54) hours per week<br><br>Ex. H ¶ 136 | $1,200.00 per week from June 2019 to February 2020<br><br>Ex. H ¶ 135 | Unpaid overtime<br><br>Ex. H ¶ 137 |
| Alberto Morales | carpentry<br><br>Ex. H ¶ 7, 139 | June 2019 to February 2020<br><br>Ex. H ¶ 7, 13, 138 | Fifty-four (54) hours per week<br><br>Ex. H ¶ 141 | $1,200.00 per week from June 2019 to February 2020<br><br>Ex. H ¶ 140 | Unpaid overtime<br><br>Ex. H ¶ 142 |
| Carlos Guardoda | carpentry, rebar work<br><br>Ex. H ¶ 7, 144 | June 2019 to February 2020<br><br>Ex. H ¶ 7, 12, 143 | Fifty-four (54) hours per week<br><br>Ex. H ¶ 146 | $1,200.00 per week from June 2019 to February 2020<br><br>Ex. H ¶ 145 | Unpaid overtime<br><br>Ex. H ¶ 147 |
| Gonzalo Cordoba | porter<br><br>Ex. H ¶ 7, 149 | November 2018 to March 2020<br><br>Ex. H ¶ 7, 9, 148 | Seventy-two (72) hours per week<br><br>Ex. H ¶ 151 | $1,000.00 per week from November 2018 to December 2019; and *Nothing from January 2020 to March 2020*<br><br>Ex. H ¶ 150 i-ii | Unpaid minimum wages, unpaid overtime<br><br>Ex. H ¶ 152-153 |

| | | | | | |
|---|---|---|---|---|---|
| Saul Reyes Ramos | carpentry, construction and rebar work<br><br>Ex. H ¶ 7, 155 | February 2020 to March 2020<br><br>Ex. H ¶ 7, 8, 154 | Fifty (50) hours per week<br><br>Ex. H ¶ 157 | *Defendants never paid Plaintiff any compensation whatsoever from February 2020 to March 2020*<br><br>Ex. H ¶ 156 | Unpaid minimum wages, unpaid overtime<br><br>Ex. H ¶ 159 |

(*see* **Exhibits N, O & P**).    *See Plaintiffs' Verified Interrogatory Responses, Dkt.*

*Nos. 110-2 to 10.*

## DEFENDANTS' VIOLATIONS UNDER NYLL COMMON TO ALL PLAINTIFFS

According to Plaintiffs' Second Amended Complaint, the Defendants also *willfully* failed to: (i) post notices of the minimum wage and overtime wage requirements in a conspicuous place at the location of their employment as required by both the NYLL, and the FLSA; (ii) to keep payroll records as required by both NYLL and the FLSA; (iii) to maintain contemporaneous payroll records as required by both NYLL and the FLSA; (iv) provide Plaintiffs with annual wage statements or pay notices upon each wage pay day as required by both NYLL, and the FLSA. Ex. H ¶¶ 160-163.

As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiffs suffered a concrete harm, resulting from Plaintiffs' inability to identify Plaintiffs' actual employer to remedy their compensation problems, lack of knowledge about the rates of pay they were receiving and/or should have been receiving for their regular hours and overtime hours, terms, and conditions of their pay, and furthermore, an inability to identify their hourly rates of pay to ascertain whether they were being properly paid in compliance with the FLSA and NYLL – which they were not.

Furthermore, Defendants' willful failures to provide Plaintiffs with these documents prevented Plaintiff from being able to calculate their hours worked, and proper rates of pay, and determine if he was being paid time-and-a-half for his overtime hours and within the prevailing minimum wage rates as required by the FLSA and NYLL.

### III.    LEGAL ARGUMENT

#### A.    Factual Allegations in the Complaint are Admitted and Accepted as True On Account of Defendants' Default

Rule 55 of the Federal Rules of Civil Procedure ("FRCP") states, in pertinent part:

> (a) When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
> (b) Entering a Default Judgment.
>> (1) *By the Clerk*. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>> (2) *By the Court.* In all other cases, the party must apply to the court for a default judgment. []. If the party against whom a default judgment is sought has appeared [it] must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.    *See*, Fed. Rules Civ. Proc. R. 55.

"Rule 55 of the Federal Rules of Civil Procedure establishes a two-step procedure by which a party may obtain a default judgment." *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (*citing* Fed. R. Civ. P. 55); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993).

First, "if a party has failed to plead or otherwise defend against an action, the Clerk of Court must enter a certificate of default by making a notation on the record." *See* Fed. R. Civ. P. 55(a).  Second, "after this entry of default, if the defaulting party still fails to appear or move to set aside the default, the court may enter a default judgment if the complaint is well-pleaded."  *See* Fed. R. Civ. P. 55(b); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). "The standard for this determination mirrors that applied to a motion to dismiss for failure to state a claim," [*see Astoria Energy II LLC v. HH Valves Ltd.*, No. 17 Civ. 5724 (ENV) (RER), 2019 WL 4120759, at *2 (E.D.N.Y. Aug. 2, 2019), *R&R adopted*, 2019 WL 4091417 (E.D.N.Y. Aug. 29, 2019)], and the Second Circuit has recently reiterated that Rule 12(b)(6) review "must accept as true all nonconclusory factual allegations in the complaint[,]" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (internal citations omitted).

The trial court possesses "sound discretion" to grant or deny a motion for default judgment. *See Enron Oil Corp.*, 10 F.3d at 95.  The Court must ensure that Plaintiff has satisfied all required procedural steps in moving for default judgment, and proffered nonconclusory facts which, when accepted as true, establish liability as a matter of law. *See*, *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Kaplan*, 999 F.3d at 854 (internal citations omitted); *Cazares v. 2898 Bagel & Bakery Corp.*, No. 18 Civ. 5953 (AJN), 2020 WL 2832766, at *3 (S.D.N.Y. May 31, 2020) (citations & internal quotation marks omitted from original).

Here, Plaintiffs have satisfied all the required procedural steps in moving for a default judgment on the Plaintiffs' Summons and Complaint, First Amended Complaint and Second Amended Complaint, culminating in the Clerk's entries of the default of the

Defendants pursuant to Rule 55(a), on July 3, 2024. *See* **Exhibits Q, R, S & T**. Moreover, Plaintiffs proffer sufficient nonconclusory facts, which, when accepted as true, establishes Defendants' liability under the FLSA, and NYLL.

In order to establish a claim against a defendant under the FLSA, a plaintiff must demonstrate: (1) that he was an "employee" of the defendant; and (2) that the defendant is an enterprise engaged in interstate commerce or in the production of goods for interstate commerce. *See* 29 U.S.C. §§ 206(a), 207(a); *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 453-54 (S.D.N.Y. 2014). Here, the Plaintiffs satisfactorily alleged both.

## B. Employer-Employee Relationship

"[T]he determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts[.]" *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). "The 'economic reality' test applies equally to whether workers are employees and to whether managers or owners are employers[,]" and it is a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Id.; see Velarde v. GW GJ, Inc.,* 914 F.3d 779, 783 (2d Cir. 2019) ("[T]he concept of employment'—pivotal to FLSA's application—is a flexible one to be determined on a case-by-case basis by review of a totality of the circumstances while emphasizing the 'economic reality' of the parties' relationships.").

Although the "economic reality" test is not determined with reference to any isolated factor, courts may consider "a nonexclusive and overlapping set of factors" as relevant to the facts of each case. *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 75-76 (2d Cir. 2003). These factors include, but are not limited to, "(1) the degree of control

exercised by the [alleged] employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the [alleged] employer's business." *Brock v. Superior Care*, 840 F.2d 1054, 1058-59 (2d Cir. 1988).

Still other nonexclusive factors that courts' "economic realities" test may take into account include whether a plaintiff's alleged defendant employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *See*, *Irizarry*, 722 F.3d at 104-06; *see Zheng*, 355 F.3d at 69 (noting "these four factors can be sufficient to establish employer status[,]" but that a positive finding on all four is not required to establish employer status).

Here, Plaintiffs' Second Amended Complaint provided sufficient factual material to establish that the named Defendants hereto were the Plaintiffs' employers, and that the Plaintiffs were their employees, in satisfaction of Plaintiffs' burden.

As asserted above, Plaintiffs have demonstrated that individual Defendants, **Mr. Cousins and Ms. Reid**, are the joint owners of Performance Master, and the day-to-day operators of the Performance Master business. Ex. H ¶¶ 48-50;54, (*see* **Exhibit M**). Moreover, Mr. Cousins and Ms. Reid were and are the corporation's authorized agent (Ex. H ¶ 53); and are the individuals who are responsible for all of the final personnel, and payroll decisions, of/at Performance Master (Ex. H ¶¶ 55-56).  Mr. Cousins and Ms. Reid's power and authority over all of the final personnel, and payroll decisions, of the business, include, *without limitation*, the exclusive power and authority to hire, fire, and terminate

all of its employees, including Plaintiffs; to establish, determine, and pay their wages; set their work schedules, and is the individual responsible for maintaining all of their employment records there (Ex. H ¶ 57-65). Accordingly, during all relevant times hereto, **Mr. Cousins and Ms. Reid** are the Plaintiffs' individual employers, within the meaning, and intent of the FLSA, and the NYLL. Ex. H ¶ 66. *See Plaintiffs' Verified Interrogatory Responses, Dkt. Nos. 110-2 to 10.*

Further, individual Defendant, **Mr. Zhiminaicela**, is Plaintiffs supervisor. Mr. Zhiminaicela's has the power and authority over all of the final personnel, and payroll decisions, *without limitation*, the power and authority to hire, fire, and terminate all of its employees, including Plaintiffs; to establish, determine, and pay their wages; set their work schedules at the job site. Plaintiffs have been consistent in identifying Mr. Zhiminaicela, repeatedly, as their supervisor at the job site. Accordingly, during all relevant times hereto, **Mr. Zhiminaicela** is one of Plaintiffs' individual employers, within the meaning, and intent of the FLSA, and the NYLL. (*see* **Exhibits N, O & P**). *See Plaintiffs' Verified Interrogatory Responses, Dkt. Nos. 110-2 to 10.*

Upon a review of the totality of circumstances, Plaintiffs' allegations are sufficient to support a finding that Mr. Cousins, Ms. Reid and Mr. Zhiminaicela were Plaintiffs' employers within the meaning, and the intent of the FLSA. *See, Brock v. Superior Care*, 840 F.2d 1054, 1058-59 (2d Cir. 1988). Accordingly, The Court should find that the Plaintiffs have proffered sufficient facts herein to establish that the named Defendants hereto were their employers under the FLSA.

### C. <u>Enterprise and Individual Coverage</u>

The FLSA's overtime provisions extend to "employees who are (1) personally engaged in interstate commerce or in the production of goods for interstate commerce (individual coverage), or (2) [were] employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce (enterprise coverage)." *Grant v. All Star Baby Safety, Inc.*, No. 16 Civ. 1516 (DRH) (ARL), 2016 WL 3746565, at *1 (E.D.N.Y. July 8, 2016) (internal citations & quotations omitted); 29 U.S.C. §§ 206(a), 207(a)(1); *see Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009) (stating that the two categories of FLSA coverage are "commonly referred to as 'individual' and 'enterprise' coverage").

As relevant here, an employee 'engages' in commerce by "performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof." 29 C.F.R. § 779.103. An enterprise engaged in commerce means an enterprise that (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made, or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)[.] 29 U.S.C. §§ 203(b), 203(s)(1)(A).

Here, Plaintiffs proffer sufficient facts (*inter alia* via their daily, personal observations, and experiences) to demonstrate that Performance Master is an enterprise

engaged in interstate commerce- and/or in the production of goods for interstate commerce, within the meaning and the intent of the FLSA. *See* 29 U.S.C. §§ 206(a), 207(a), *et. seq*.

Plaintiffs' Second Amended Complaint further alleged that Performance Master is, at present, and had been at all times relevant to the allegations in the complaint, an enterprise engaged in interstate commerce within the meaning of the FLSA in that the entity (i) has had employees engaged in commerce or in the production of goods for commerce, and handle, sell or otherwise work on goods or material that have been moved in or produced for commerce by any person: and (ii) has had an annual gross volume of sales of not less than $500,000.00 (29 U.S.C. §§ 203(b); 203(s)(1)(A); C.F.R. § 779.103). Ex. H ¶ 67. The Complaint further averred, *inter alia*, that during all relevant times, the Defendant had, on its payroll, at least 50 to 100 other employees during the relevant time-period whom Defendants also subjected to similar unlawful payment structures that violated the law. Ex. A ¶¶ 167. Plaintiffs have offered supporting factual matter to casually connect the work that the Plaintiffs personally performed work for Mr. Cousins, Ms. Reid and Mr. Zhiminaicela at Performance Master daily with the statutory requirement to establish the necessary elements.

Accordingly, the Plaintiffs proffer sufficient factual material in satisfaction of their burden herein to support a finding that Performance Master is an enterprise in accord with the Intent of the FLSA. 29 U.S.C. §§ 203(b), 203(s)(1)(A).

### IV.    <u>DETERMINATION OF DAMAGES OWED TO PLAINTIFFS</u>

FRCP Rule 55(b)(2) states, in part, that in order to determine the amount of damages in the context of a default judgment, "the court may conduct...a hearing." Under Rule 55(b)(2), however, "it [is] not necessary for a District Court to hold a hearing, as long

as it [is] ensured that there was a basis for the damages specified in the default judgment."
*Fustok v. ContiCommodity Services, Inc.* 873 F.2d 38, 40 (2d Cir. 1989); *see Tamarin v. Adam Caterers, Inc.* 13 F.3d 51, 54 (2d Cir. 1993).

The "court still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed." *1199 SEIU United Healthcare Workers East v. South Bronx Mental Health Council, Inc.*, 2013 U.S. Dist. LEXIS 161864, *3–4 (S.D.N.Y. Nov. 13, 2013). However, it need not make the determination through a hearing. *Id*. The Second Circuit has approved holding of an inquest by affidavit, without an in-person court hearing, as long as the Court has ensured that there was a basis for the damages specified in the default judgment." *Martinez v. Alimentos Saludables Corp.*, 2017 U.S. Dist. LEXIS 156657, *29 (E.D.N.Y. Sep. 22, 2017), *adopted* 2017 U.S. Dist. LEXIS 174714 (E.D.N.Y. Oct. 18, 2017) (*other internal citations omitted*).

Here, the Plaintiffs' damages due for their unpaid overtime and minimum wage claims can be determined based on the evidence presented in the record hereto, their FLSA Second Amended Complaint (**Exhibit H**), and by "any other documentary evidence" to "a reasonable certainty," *i.e.*, Plaintiffs' itemized Calculations of their damages due by the Defendants *In a Sum Certain*. *See*, **Exhibit V**. *See 1199 SEIU United Healthcare Workers East*, 2013 U.S. Dist. LEXIS 161864 at *11; *Styka v. My Merchants Services LLC*, 2016 WL 11396819, *4 (E.D.N.Y. Mar. 15, 2016), *adopted in its entirety with respect to damages* 2016 WL 3866550 (E.D.N.Y. July 13, 2016). In the context of a motion for default judgment, the courts may rely "on the Plaintiffs' affidavit testimony and the complaint in calculating amount of damages to be awarded." *Id.* (*see* **Exhibits N, O & P**). *See Plaintiffs' Verified Interrogatory Responses, Dkt. Nos. 110-2 to 10.*

The Complaint herein asserts six (6) causes of action against the Defendants: (1) unpaid overtime wages under the FLSA; (2) unpaid overtime wages under the NYLL; (3) unpaid minimum wages under the FLSA; (4) unpaid minimum wages under the NYLL; (5) willful violations of the Notice and Recordkeeping requirements of § 195(1) of the NYLL; and (6) willful violations of the Wage Statement requirements of § 195(3) of the NYLL.  *See* **Exhibit A** ¶¶ 179-206.

The Plaintiffs' damages claimed herein "relates to the damages that naturally flow from these injuries pleaded" (*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 [2d Cir.1992)]), and as explained below, are calculated and proven to "a reasonable certainty."  *Hosking v. New World Mortg., Inc*., 570 Fed. App'x 28, 31 (2d Cir. 2014).  *See,* **Exhibit V**, Plaintiffs' itemized Calculations of their damages due by Defendants in a Sum Certain.

### a.  <u>Plaintiffs are entitled to damages for Unpaid Overtime Wages in a Sum Certain</u>

Generally, the FLSA mandates that for employees, like Plaintiffs, who work in excess of 40 hours per week, such employee must receive additional "compensation for his employment in excess of the [40] hours specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a).

According to the Complaint, the Defendants failed to adhere to federal and state overtime regulations. 29 U.S.C. § 207(a)(1); N.Y. Lab. Law § 663; and N.Y. Comp. Codes R. & Regs. Tit. 12 § 146-1.4, *et seq*.   Section 7 of the FLSA & § 146-1.4 of New York labor regulations mandate that employers pay employees a minimum of time-and-a-half of regular rate of pay for hours worked over forty (40) in a week.

Using the Plaintiffs' weekly rates, as described above, which, pursuant to applicable wage-and-hour laws, covered only their first 40 hours worked each week, and which rates were paid without any regard for the number of hours Plaintiffs were regularly required to work during each such week, first, we calculated Plaintiffs' converted hourly rates by dividing their weekly rates to 40, the number of hours, Plaintiffs' pay was intended to cover.

Next, we calculated Plaintiffs' applicable overtime rates of pay, by multiplying Plaintiffs' converted hourly rates during each year of their employment that they were paid a flat weekly rate, by time-and-a-half (1.5).

Third, we calculated Plaintiffs' unpaid overtime wages owed per week, by multiplying Plaintiffs' applicable Overtime rates of pay, by the number of hours Plaintiffs regularly worked during each year of their employment with Defendants.

Lastly, we multiplied Plaintiffs' unpaid overtime owed per week, by the number of weeks that Plaintiff worked during each year of their employment with Defendants.

In sum, Plaintiffs are owed total unpaid overtime wages in a sum certain of **$281,268.21,** broken down as follows:

| | | |
|---|---|---|
| Israel Camey Morales | : | $24,570.00 |
| Hector Martinez | : | $28,012.50 |
| Luis Maurat | : | $21,825.00 |
| Isaias Noe Herrera | : | $24,570.00 |
| Rogberto Alfaro | : | $24,570.00 |
| Angel Arana | : | $24,570.00 |
| Alberto Morales | : | $24,570.00 |
| Carlos Gaurdoda | : | $24,570.00 |
| Gonzalo Cordoba | : | $82,114.29 |
| Saul Reyes Ramos | : | $1,896.43 |

See **Exhibit V**.

### b.  Plaintiffs Unpaid Minimum Wage

Since Plaintiffs HECTOR MARTINEZ, LUIS MAURAT, GONZALO CORDOBA and SAUL REYES RAMOS were neither compensated at their usual rates nor the prevailing minimum wage during various times as stated above, Plaintiffs should be entitled to at least the prevailing minimum wage of $15.00 per hour. As such, we calculated Plaintiffs' damages for unpaid minimum wages owed, by multiplying the minimum wage rate of $15.00, by the total number of weeks that Plaintiffs worked for the Defendants without pay.

In sum, Plaintiffs are owed total unpaid minimum wages in the sum certain of **$25,542.86**, broken down as follows:

| | | |
|---|---|---|
| Hector Martinez | : | $7,714.29 |
| Luis Maurat | : | $5,057.14 |
| Gonzalo Cordoba | : | $7,714.29 |
| Saul Reyes Ramos | : | $5,057.14 |

See **Exhibit V**.

### c.  Total Wages Owed

Accordingly, Plaintiffs are owed $281,268.21 in unpaid overtime wages and $25,542.86 in unpaid minimum wages, for a total of **$306,811.07** in unpaid wages arising under the FLSA/NYLL.  *See* **Exhibit V**.

Additionally, as explained below, the Plaintiffs are entitled to an award for statutory damages, and liquidated damages pursuant to the FLSA, and the NYLL.

### d.  Plaintiffs are entitled to an award of full Liquidated Damages

Employees are entitled to liquidated damages when the employer's violation was willful. NYLL §§ 198(1-a), 663(1).  It is "the employer [that] bears the burden of

establishing, by plain and substantial evidence, subjective good faith and objective reasonableness." *Reich*¸121 F.3d at 71 (*Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir. 1987)). A court may decline to award liquidated damages where "the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 663(1); *see also Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 293 (S.D.N.Y. 2016) ("[A] November 24, 2009 amendment changed the NYLL liquidated damages provision to resemble that of the FLSA, which requires only an absence of good faith on the part of the employer, shifting the burden to the employer to prove that he acted in good faith.").

In this case, and as set forth at length above, the Plaintiffs have pleaded ample factual matter demonstrating the willfulness of the Defendants' conduct with respect to Defendants' compensation of Plaintiffs. The Plaintiffs have provided ample supporting factual matter to establish that Defendants failed to make a good faith effort to properly compensate Plaintiffs - or ascertain their obligations with respect to payment of employees' wages under the FLSA and NYLL.

Defendants failed to compensate Plaintiffs for all hours worked, and did not implement any system for tracking or recording employees' hours worked and pay received. Additionally, the Defendants did not provide Plaintiffs with *any* paystub upon each payment of his wages, nor with *any* wage statements, detailing Plaintiffs' hours worked during each such week, or the pay Plaintiffs would be provided by Mr. Cousins, Ms. Reid and Mr. Zhiminaicela. Furthermore, instead of keeping and maintaining accurate and contemporaneous payroll records as required by both the FLSA and NYLL – or

alternatively, maintaining some system for recording the hours that Plaintiffs worked and their pay to be received.

Furthermore, the Defendants have failed to appear herein, at all, and have defaulted, and have failed to meet their burden to show that such failures to comply with federal, and state overtime laws were otherwise made "in good faith." *Blue*, 2010 U.S. Dist. LEXIS 73223 at \*33-34, "rendering full liquidated damages appropriate." *See, e.g., Lu Nan Fan*, 2019 WL 1549033, at \*11.

As asserted herein, the Defendants have defaulted willfully or deliberately – Plaintiffs' counsel has served Mr. Cousins, Ms. Reid and Mr. Zhiminaicela, time after time, with copies of the Plaintiffs' Summons and Complaint, First Amended Complaint and Second Amended Complaint, as well as other filings during pendency of this matter – and contacted Mr. Cousins, Ms. Reid and Mr. Zhiminaicela during pendency of this matter to afford Defendants every opportunity to appear, retain counsel, or otherwise defend in this matter on the merits – to no avail. Indeed, Defendants' default in this matter have been deliberate, and willful. Therefore, Plaintiffs should be compensated by The Court for the full amount of their damages that Defendants still owe to Plaintiffs as well as an equal amount in liquidated damages pursuant to the FLSA/NYLL.

### e.  Statutory Damages Under the NYLL's Wage Theft Prevention Act for The Defendants' Willful Record-Keeping Violations

Section 195(1)(a) of the NYLL requires employers to provide employees at the time of hiring with a wage notice containing, among other things, the rate of pay, the basis thereof, and the pay schedule. After February 27, 2015, violations of section 195(1) carry damages of $50 per workday, up to a maximum of $5,000. *See* N.Y. Lab. Law § 198(1-b). Further, section 195(3) of the NYLL requires employers to furnish employees with "a

statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details." *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (internal quotations and citation omitted). After February 27, 2015, violations of section 195(3) carry damages of $250 per workday, up to a maximum of $5,000. *See* N.Y. Lab. Law § 198(1-d).

Here, Plaintiffs allege that they have never received a single paystub, wage notice, wage statement nor any other such written documentation from Mr. Cousins, Ms. Reid and Mr. Zhiminaicela nor Defendants at any point during the course of their employment with Defendants.

Accordingly, because the Plaintiffs worked without a wage notice for more than 100 days and without a wage statement for more than 20 days, and these violations occurred after February 27, 2015, Plaintiff is entitled an award for the maximum statutory damages of $5,000 under NYLL section 195(1) and $5,000 under section 195(3), for a total of $10,000. *See, e.g., Sarmiento Perez v. Comhar Grp. LLC*, No. 19-CV-0964 (FB) (JO), 2020 WL 1364908, at *6 (E.D.N.Y. Mar. 6, 2020), *report and recommendation adopted*, No. 19-CV-964 (FB) (JO), 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020); *Jianmin Jin v. Shanghai Original, Inc.*, 2019 WL 3244187, at *5 (E.D.N.Y. July 19, 2019).

### f.  Post-judgment Interest

Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield … for the calendar week preceding the date of the judgment."

An award of post-judgment interest at the statutorily prescribed rate is mandatory. *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008). The one-year constant maturity Treasury yield as of today, is approximately 5.12.[1]  Accordingly, Plaintiffs respectfully request an award of post-judgment interest, calculated from the date of entry of judgment in favor of Plaintiffs and against the Defendants, until the date judgment is paid in full.

## <u>CONCLUSION</u>

As a result of the above violations of law by Defendants Performance Master Inc. and Dorrel Cousins, Leslie Reid and Angel Zhiminaicela, Plaintiffs are owed unpaid overtime wages in the amount of $281,268.21, and $25,542.86 in unpaid minimum wages. In addition, Plaintiffs are owed liquidated damages in the amount of $306,811.07, and statutory penalties in the amount of $100,000.00 for violations of notice and wage statement requirements under New York Labor Law.  In sum, Defendants Performance Master Inc. and Dorrel Cousins, Leslie Reid and Angel Zhiminaicela, owe Plaintiffs, jointly and severally, **<u>$713,622.14.</u>**  *See* calculations attached to the Attorney's Affirmation for Motion to Enter Default Judgment, as **<u>Exhibit V</u>**).

It is respectfully submitted that Plaintiffs satisfied Plaintiffs' burden of having established: (i) a valid basis for their claims for damages; and (ii) amount of their damages to a sum certain obviating the need the Court to schedule a hearing to determine the sum of their damages against the Defendants, to which the Plaintiffs are herein entitled.

Accordingly, based on the foregoing, Plaintiffs respectfully request that the Court grant Plaintiffs' motion; and order a default judgment in sum certain be entered against the

---

[1] *See* https://www.federalreserve.gov/releases/h15/

Defendants without the need for an Inquest on damages, and as indicated within the Plaintiffs' Proposed Order for a Default Judgment, hereto as **Exhibit W**.


Dated:  Kew Gardens, New York
          July 17, 2024


                                        *Respectfully submitted*,

                                        **HELEN F. DALTON & ASSOCIATES, P.C.**
                                        *Attorneys for Plaintiffs ISRAEL CAMEY MORALES, HECTOR MARTINEZ, LUIS MAURAT, ISAIAS NOE HERRERA, RIGOBERTO ALFARO, ANGEL ARANA, ALBERTO MORALES, CARLOS GUARDODA, GONZALO CORDOBA, and SAUL REYES RAMOS*


                                        *Roman Avshalumov*
                                        Roman Avshalumov, Esq.